JUSTICE ALLOY
 

 delivered the opinion of the court:
 

 Robert Feagans appeals from his convictions and sentencing, following a jury trial, for murder and armed robbery. He received a six-year term of imprisonment on the armed robbery conviction and a 60-year term on the murder conviction. On appeal, he asserts as grounds for reversal (1) that the trial court erred in refusing the tendered instruction of the defense on voluntary intoxication and (2) that it also erred in admitting into evidence certain allegedly prejudicial color slides of the victim’s body. The defense also argues that the armed robbery conviction must be vacated as it is a lesser included offense of the murder conviction. Concerning sentencing, the only issues raised focus on whether the court abused its discretion in sentencing Feagans to an extended term on the murder count.
 

 The record reveals the following facts. On March 18, 1982, 42-year-old Charles Cummings, an employee of Precision Products in Springfield, cashed his payroll check at a grocery store there. He then stopped for a couple of drinks at a bar. Later in the evening he went to Pete and Bud’s Lounge for more drinks. He sat at the bar. Shortly after Cummings arrived, the defendant Robert Feagans, his brother Leslie, and David Landers entered the tavern. The three played pool and drank at Pete and Bud’s. After a while, either the defendant or Landers struck up a conversation with Cummings, who eventually bought several “rounds” of drinks for the three men. When they decided to go to another tavern, Cummings accompanied them. At the next tavern, the Porthole, they again played pool and Cummings bought more beer. When a disturbance began, they left. They may have left either in one or two vehicles, as the record is unclear on this point.
 

 In any event, by the time the four arrived at the next tavern, the Runway Tavern, they were all riding in Landers’ auto and were all “pretty well” intoxicated, according to the bartender there. Cummings had to be held up by two of the men. When the bartender refused to serve them, Leslie Feagans bought a six-pack and they went to the car. According to a statement given by defendant to police at the end of April, which was admitted into evidence during the State’s case, it was after they left the Runway Tavern that Landers suggested that they “roll” (rob) Cummings. The defendant stated that he was against the idea, but Landers indicated that Cummings would not be hurt and would be released after the robbery. They continued to ride around in Landers’ auto, with the defendant and Cummings in the back seat and Landers, with Leslie Feagans, in the front seat. They continued driving and drinking for about an hour. Landers drove north on Route 29 out of Springfield, and then turned around and headed back into town.
 

 During the return ride, Landers again stated his desire to rob Cummings. The defendant, in his statement, said that he told Landers to do what he wanted, but he and his brother wouldn’t help at all. Landers then threatened them. At this point, Landers gave Leslie Feagans a stick, from under the seat, and told Leslie to hit Cummings. When Leslie said no, Landers passed the stick to the defendant, who also refused to hit Cummings. Landers then told Cummings to remove his clothing, which he did. Landers went through the pockets of Cummings’ clothing, finding approximately $3. Cummings put his clothes back on. At some point hereabouts, Landers threatened to kill Cummings, because he could “identify them.” The defendant told police that he protested, telling Landers to keep him and his brother out of it. Landers, according to the defendant, threatened them if they wouldn’t help. Leslie Feagans then stuck a pipe in Cummings’ mouth and the defendant tore up his shirt and tied Cummings’ hands and feet. These actions were taken, according to defendant, in response to Landers’ threats and direction. The defendant stated that he tried to make his knots loose, so that Cummings could walk home.
 

 About one-half mile before the Route 29 bridge over the Sangamon River, Landers indicated that he was going to throw Cummings into the river. The victim was nervous and well intoxicated. No attempt was made by him to defend himself. Landers threatened the defendant Robert Feagans against making any attempt to help Cummings. At this time Leslie Feagans had almost passed out, from his intoxication. At the bridge, Landers pulled over and stopped the car, with the passenger side toward the water. He opened the door and pulled Cummings out. The defendant, in his statement to police, stated that he wanted to help Cummings, but was afraid of Landers. Landers picked up Cummings, hit him on the back of his head and then threw him over the bridge railing into the river. The defendant stated that while this sobered him up quickly, it was too late for him to take any action.
 

 On the return ride to Springfield, Landers disposed of the remainder of Cummings’ clothing and dropped the defendant and his brother at Robert Feagans’ truck. They then drove to his brother’s home and spent the night.
 

 Other State’s evidence supplemented, and at times contradicted, the defendant’s statement to police concerning the robbery and murder. Larry Chronister, who lived with the defendant’s ex-wife in the same trailer park as defendant, testified that the defendant visited his ex-wife on March 19 or 20, asking her to cut and dye his hair, so he wouldn’t be recognized. In conversations with Chronister on the 20th of March the defendant asked how long a weighted body would take to surface and float in the river. According to Chronister, during the conversation the defendant admitted that he had killed someone, saying he had thrown someone off a bridge into the river a couple of days earlier. Also testifying was Leslie Feagans’ wife, Donna, who stated that the defendant told Leslie to shut up on March 19, when he was talking with her. The defendant also told her that he tied a man’s hands and that Landers had thrown him over, without further elaboration. He told her it didn’t bother him.
 

 In his statement to police, the defendant stated that Landers threatened to kill him and his brother if they said anything about the murder. Authorities began searching the river for Cummings in late April, with no initial success. On April 29, 1982, the defendant voluntarily accompanied detectives to the station for questioning. There he gave them an oral statement and the written one.
 

 Wayne Franklin, a boyfriend of the defendant’s sister, also testified to conversations he had with the defendant around the time of the killing. During the conversations the defendant admitted the events of the night of the murder, indicating at first that he was an innocent bystander, with Leslie and Landers the participants. Later he admitted to Franklin that Leslie had passed out and he had tied Cummings up, while both he and Landers had thrown Cummings into the river.
 

 Cummings’ body was found on May 2, 1982, near the Route 29 Sangamon River Bridge. The body was photographed where it was found by two fishermen. The body still had trousers on and one sock. A pants pocket was turned out, and strips of cloth tied to the neck, right ankle and left wrist. The defendant was arrested on May 2, 1982, and charged with armed robbery, murder and felony murder.
 

 The only other State’s witness at trial was the pathologist who performed the autopsy. He stated that he found three $20 bills in the sock on the body. The body was in a state of severe decomposition. There were no external wounds found and no evidence of trauma. A blood sample from the lungs indicated an alcohol content of .29, and the pathologist could not specify the content at the time of the death. The pathologist testified that he removed the ties from the body. Photographic evidence of the body, being colored slides, was admitted over defense objection that it was highly inflammatory and prejudicial, with little probative value.
 

 The only witness for the defense was the defendant himself. Pertinent additional information set forth in his testimony included the fact that he had not met Landers before that fateful night, Landers having just gotten out of prison. The defendant stated that he could not recall who took the money from Cummings, but testified that he did not receive any of it. He also testified, consistent with his statement to the police, that he attempted to convince Landers to release Cummings unharmed, but was unsuccessful. Although at first stating that he didn’t realize Landers’ intentions, on cross-examination he admitted that he knew something was going to happen and someone might be killed. He repeated that Landers had threatened both him and his brother if they did not help him and follow his directions. He admitted tying Cummings’ hands and feet, but stated that he made the knots loose. He further stated that he did not get out of the car at the. bridge and Landers had tossed Cummings over the side. In most other substantial respects, his testimony was consistent with the statement he had given to police in late April. The defendant denied telling Chronister that he had thrown a man into the river, and contradicted Franklin’s recollection of their conversation.
 

 During the jury instruction conference, the trial court rejected a defense instruction based upon the defense of voluntary intoxication. The court found that there was no evidence that the defendant was incapable of acting knowingly, which was a requisite element of the intoxication defense. Ill. Rev. Stat. 1981, ch. 38, par. 6 — 3(a).
 

 After deliberating for slightly more than three hours, the jury returned guilty verdicts for both murder and armed robbery. The presentence report indicated three prior misdemeanor convictions, with no juvenile history. The defendant was married to his second wife, at the time of the hearing, with a child by each wife. He had auto mechanic skills.
 

 The trial court imposed a sentence of six years’ imprisonment on the armed robbery charge, but an extended term of 60 years on the murder conviction. In commenting upon the latter, the trial judge emphasized the heinous and senseless nature of the murder. Sentences were made to run concurrently. This appeal followed.
 

 As a question on appeal is raised with respect to unequal treatment of the three men in sentencing, it is noted that David Landers was convicted, after a jury trial, of the murder and armed robbery and sentenced to an extended term of 65 years, to run concurrently with a 10-year term on the armed robbery charge. His appeal is pending. Leslie Feagans was tried before a jury and convicted of murder and armed robbery, receiving a 35-year term and a 10-year term, respectively. (People v. Feagans (1983), 118 Ill. App. 3d 991.)
 

 The first issue raised by the defendant is whether the trial court erred in refusing to instruct the jury on the defense of voluntary intoxication. We find no error with the instructions. A defendant is entitled to have the jury instructed on his theory of defense, where the defense has a foundation in the evidence, however slight. (People v. Stombaugh (1972), 52 Ill. 2d 130, 284 N.E.2d 640.) The defense of voluntary intoxication is available where there is evidence of both intoxication and a resultant negation of the existence of the requisite mental state for the crime charged. (Ill. Rev. Stat. 1981, ch. 38, par. 6 — 3(a).) In the case at bar, while there was evidence of the defendant’s intoxication, there was no evidence supporting a finding that his intoxication was so extreme as to suspend all reason, or to render him incapable of acting knowingly. (People v. Moon (1982), 107 Ill. App. 3d 568, 437 N.E.2d 823.) As in the Moon case, here the defendant’s own statements, both that given to police and his trial testimony, belie any contention that the intoxication was sufficient to negate the mental state requirements for murder, armed robbery, and accountability under the felony murder count. The defendant’s own account of the night of the murder establishes his capabilities, despite the intoxication, to act knowingly and intentionally, without significant impairment of reasoning. There was no evidence indicating otherwise presented to the jury. The defense argues, incorrectly, that the evidence of intoxication, coupled with the State’s duty to prove a mental state, requires giving the instruction on voluntary intoxication. It is only where there is evidence that the intoxication negated a requisite mental state that the instruction is to be given, and the defense points to no such evidence. We find the court correctly disallowed the defendant’s tendered instruction based upon voluntary intoxication.
 

 The next issue is whether the trial court abused its discretion in permitting the pathologist’s testimony to be illustrated through the showing of color slides of the victim’s body. It is contended that the slide evidence was highly inflammatory and prejudicial, as it displayed the gruesome appearance of the decomposed body. As was noted in People v. Hicks (1981), 101 Ill. App. 3d 238, 242, 427 N.E.2d 1328:
 

 “The trial court has discretion to admit photographs in a criminal prosecution. The court should balance the probative value of the photos against their prejudicial effect. The decision of the trial court will not be reversed absent an abuse of discretion. [Citation.] Trial courts have discretion to admit a photograph if it is probative, even if the photo is also gruesome. [Citation.] In the case at bar, the photographs corroborated and aided the testimony of the pathologist. Therefore, the trial court did not abuse its discretion in the admission of the photographs into evidence. [Citation.]”
 

 The slides here objected to were close-ups of the corpse, all but one depicting the knots of clothing on the victim that were used to bind his hands and feet, as well as gag him. Another focused upon the pants with the pocket turned out. These photos were illustrative and corroborative of the previous testimony by the pathologist. In addition, they focused upon the results of the defendant’s activity in binding the victim. This activity, and how it was done, was a principal focus of the State’s accountability theory, and was discussed by the defendant in his written police statement, entered into evidence. It was probative of that activity and the manner in which the defendant carried it out. Trial courts must approach potentially prejudicial photos with caution, and deny admission where they have little probative value. (See People v. Coleman (1983), 116 Ill. App. 3d 28, 451 N.E.2d 973.) As noted, the decision is initially within the discretion of the trial court, and a number of courts have permitted photographs, albeit gruesome, where they corroborate and explain a pathologist’s testimony on probative matters. (People v. Hicks; People v. Owens (1976), 65 Ill. 2d 83, 90, 357 N.E.2d 465.) The State, in the Coleman case, could not point to any probative value of the photographs on the issues of identity and cause of death. Moreover, the court there declined to determine whether introduction of the photographs, by themselves, would have constituted reversible error. In the instant case, they had probative value and were supplemental to and illustrative of the pathologist’s testimony on material questions. The trial court determined that their prejudicial effect did not outweigh their probative value, and we find no abuse of discretion in that ruling.
 

 The third issue raised by the defense is whether the defendant’s armed robbery conviction must be reversed and vacated because armed robbery is a lesser included offense of felony murder. We address the issue over the State’s contention that it was waived by defense counsel’s failure to include it in his post-trial motion. The jury was given an instruction containing both the murder (Ill. Rev. Stat. 1981, ch. 38, par. 9 — 1(a)(2)) and felony murder (Ill. Rev. Stat. 1981, ch. 38, par. 9 — 1(a)(3)) theories, as well as a separate instruction for armed robbery. In addition to the guilty verdict on armed robbery, the jury returned a general verdict finding the defendant guilty of murder, without specifying either murder or felony murder as its basis. The defense position is that since the verdict was ambiguous, the ambiguity must be resolved in favor of the defendant and the jury should be held to have found the defendant guilty of the lesser offense of felony murder. Under the defense argument, since the armed robbery was the basis of the felony murder conviction, it should be vacated as a lesser included offense. (People v. Devine (1981), 98 Ill. App. 3d 914, 424 N.E.2d 823; People v. Abrams (1982), 109 Ill. App. 3d 901, 441 N.E.2d 352.) The main weakness with this argument is its assumptions concerning the effects of a general verdict. While ambiguities in a criminal statute must, under settled principles, be construed in favor of a criminal defendant (People v. Haron (1981), 85 Ill. 2d 261, 422 N.E.2d 627), that is not the case with a jury’s verdict. It is established that where the jury renders a general verdict, it is presumed to be based on any good charge to which the proof is applicable. (People v. Lymore (1962), 25 Ill. 2d 305, 307-08, 185 N.E.2d 158; People v. Brown (1980), 83 Ill. App. 3d 261, 403 N.E.2d 1324.) Thus, the general verdict (which form was not objected to by defense counsel, according to the record) of guilty for murder was sufficient, on the facts, for conviction of both the 9 — 1(a)(2) theory or the 9 — 1(a)(3) felony murder. Had the court entered convictions for both, however, the 9 — 1(a)(3) conviction would have to be vacated, as the lesser offense. (People v. Martin (1983), 112 Ill. App. 3d 486, 504-05, 445 N.E.2d 795; People v. Bone (1982), 103 Ill. App. 3d 1066, 1068-69, 432 N.E.2d 329. See also People v. King (1977), 66 Ill. 2d 551, 363 N.E.2d 838.) The trial court properly did not enter convictions on both the knowing murder and felony murder counts, thereby avoiding error. It entered a single conviction for murder. In light of the requirements of the above cases, it must be concluded that the conviction entered by the court was for the greater murder charge, the section 9 — 1(a)(2) knowing murder. Since armed robbery is not a lesser included offense of that murder conviction, the armed robbery conviction need not be vacated.
 

 The final issue is whether the court erred in imposing an excessive extended-term sentence of 60 years on the defendant for the murder conviction and whether there is an unconstitutional disparity in sentencing among the participants. We find no error. It is firmly established that sentencing is -within the discretion of the trial court. The court, in entering the extended term, noted it was based upon the fact that the crime was accompanied by exceptionally brutal and heinous behavior, indicative of wanton cruelty. That finding is supported in the evidence. It is clear that the defendant actively participated in binding the hands and feet of the victim and that he knew of, and possibly participated in, the ultimate action in throwing the victim off the bridge. As to any disparity between the defendant’s sentence and his brother’s, such is justified on the basis of the defendant’s admittedly more active role in the crimes. By the defendant’s statement, and according to his brother’s as well, Leslie Feagans had passed out during the actual removal of Cummings from the car and his being thrown into the river. It is firmly established that there is no unconstitutional disparity where the disparity in treatment is warranted by differences in the nature and extent of the concerned defendants’ participation in the offense. (People v. Godinez (1982), 91 Ill. 2d 47, 55, 434 N.E.2d 1121.) That is true in the instant case.
 

 For the reasons stated, the judgments of conviction for murder and for armed robbery are affirmed.
 

 Affirmed.
 

 SCOTT and BARRY, JJ., concur.