THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JAMES E. TANNER, Defendant-Appellant.

Third District   No. 3—85—0132

Opinion filed March 26, 1986.

Robert Agostinelli and Frank W. Ralph, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward F. Petka, State's Attorney, of Joliet (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WOMBACHER delivered the opinion of the court:

Defendant James Tanner appeals his convictions for aggravated criminal sexual assault, armed violence, and two counts of aggravated battery. He was sentenced to 10 years on the sexual assault and three years each on the other charges, all to run concurrently. We affirm.

The victim testified that she had borrowed a friend's car to go out on the night of the incident. Her first stop was the Big Ten, a bar on Lockport Road. While there, she shot pool and drank. Her uncle then walked in. He was dressed as a woman. The victim and her uncle then went to the Oasis bar. She spent approximately two hours there shooting pool and drinking. Her uncle sat at the bar alone, drinking.

The victim and her uncle then went to the Pheasant Club. There, they sat at the bar, drinking. Subsequently, defendant and two others approached them. One of defendant's companions, Darrin Davis, offered to buy the victim a drink, which she refused. She recognized defendant and Davis, having seen them before. The victim then began dancing with another patron. Meanwhile, defendant and his friends went to sit at the table at the back of the bar.

As the bar was closing, the victim and her uncle started to leave. Another patron, Robert Cartright, asked the victim for a ride. As the three were about to leave, the victim saw defendant and his compan-

ions walking towards the car. The victim rolled down the window. She stated that, then, defendant reached through the open window and hit her twice in the face. The victim pushed his hand away and got out of the car. Defendant then struck her on the side of the face with his fist. She then got back in the car and drove away. Neither defendant nor the other two were struck by the car as she drove away.

The victim noticed in her rear-view mirror that a car was speeding up to her. She made two left turns to avoid the other car, but was cut off. She was cut off a third time and had to slam on the brakes. Her car went dead. At this point, defendant and his companions exited their car and entered the victim's. Cartright and the victim's uncle exited the car to run away. Defendant told the others not to let the uncle get away.

The victim then got out of the car and started to run. Defendant told another man, Hogue, not to let her go either. They both chased her. Hogue caught her. Defendant then came up and hit her on the left side of the head and on the chest with his fist. The victim again tried to run, but was caught. Defendant was handed a broken pool cue and struck the victim in the leg.

At that point, Hogue grabbed the victim's blouse, tearing it. Davis and Hogue then pulled her clothes off. The victim was then placed on the ground. Hogue got on top of her and had intercourse with her. Defendant knelt by the victim's head and forced her to perform fellatio. After Hogue was finished the victim attempted to get dressed. Davis stopped her and tried to have intercourse with her.

After Davis gave up his efforts, the victim then put on her pants and wrapped a blanket around herself. Defendant again began to strike her with his fist, kick her in the mouth, and hit her with the pool cue. Defendant further beat her and then choked her. The victim eventually escaped and phoned the police. She was examined at Silver Cross Hospital. Her face was swollen for one week. Her leg was swollen for two or three weeks, and it was still dark and dented at the time of trial.

The victim was impeached by admitting three prior misdemeanor theft convictions. She also admitted that she did not tell the police of any oral sex with her attackers. She told no one of the act until her fourth meeting with an assistant State's Attorney.

The uncle of the victim essentially corroborated the victim's testimony. He stated that after he had left the car, two men grabbed him, threw him to the ground, kicked him, and hit him with the pool cue repeatedly. He was hospitalized for one week as a result of the beating.

Defendant did not testify, but two statements given to the police were admitted into evidence. His version of the facts differed in many aspects. He admitted chasing and hitting her. This was because she allegedly hit him in the leg with the car she was driving. He specifically denied having any sexual contact with her.

A forensic scientist was called. She stated that a microscopic analysis had been performed on various hairs found on the victim. A pubic hair, found in the victim's head, was consistent with the defendant's and not the others. Another pubic hair and a scalp hair found on the victim's jeans were also consistent with the defendant and not the others.

The jury returned guilty verdicts on all counts. Defendant was sentenced to concurrent terms of 10 years and three 3-year terms. He appeals.

The first issue raised by defendant is whether the court erred in instructing the jury on a different theory than was charged in the indictment. The indictment alleged, in two counts, that defendant had knowingly committed an act of sexual penetration by the use of force. The indictment also alleged that the penetration was sexual intercourse. One count alleged that he had caused her bodily harm in doing so, the other that he displayed a dangerous weapon.

■■ Criminal sexual assault is committed when the accused commits an act of sexual penetration by the use of force or by the threat of force. (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—13(a)(1).) The crime is classified as aggravated if the accused caused bodily harm or displayed, threatened to use, or used a dangerous weapon. (Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—14(a)(2).) Sexual penetration is defined as "any contact, however slight, between the sex organ of one person and the sex organ, mouth, or anus of another person, *** including but not limited to cunnilingus, fellatio, or anal penetration." Ill. Rev. Stat., 1984 Supp., ch. 38, par. 12—12(f).

■■ Defendant correctly states that the State has the burden of proving all elements of the offense of aggravated criminal sexual assault beyond a reasonable doubt. (*People v. Weinstein* (1966), 35 Ill. 2d 467, 220 N.E.2d 432.) He also states that the State was required to prove the type of penetration alleged in the indictment beyond a reasonable doubt. The instructions tendered to the jury parroted the language of the above-quoted sections in defining the offense and sexual penetration. Defendant objected, arguing that the general definition of sexual penetration was improper given the fact that a specific type of penetration was alleged in the indictment.

■■ The State argues that the type of sexual penetration is not an

element of the offense, and that its inclusion in the indictment was merely surplusage. We agree. Whenever an averment could be stricken out without vitiating the indictment, it can be treated as surplusage and rejected. (*People v. Young* (1973), 12 Ill. App. 3d 310, 297 N.E.2d 578.) We find that the type of penetration that constitutes the sexual assault is not an essential element of the offense. In the present case, the indictment would have been sufficient if it stated the offense in the terms of the statutory language. "[T]here is no need for the charge to specify the exact means by which the conduct was carried out." (*People v. Wisslead* (1985), 108 Ill. 2d 389, 397, 484 N.E.2d 1081.) A defendant's desires for additional specificity can be cured by a bill of particulars. (*People v. Wisslead* (1985), 108 Ill. 2d 389, 484 N.E.2d 1081.) We hold that the State need only prove that *a* type of sexual penetration occurred beyond a reasonable doubt. We find no error in the variance. "[A] variance or lack of proof of facts alleged is not fatal [to the conviction] if the facts in question are not essential elements of the crime charged. [Citations.]" *People v. Austin* (1984), 123 Ill. App. 3d 788, 794, 463 N.E.2d 444.

However, defendant claims on appeal that he was prejudiced by the variance in preparing his defense. Variances are material if they mislead the accused in making his defense or expose him to second jeopardy from the same offense. (*People v. Clark* (1979), 71 Ill. App. 3d 381, 419, 413 N.E.2d 413.) It is clear that the indictment in the present case bars further jeopardy. Thus, we shall examine if defendant was misled in making his defense.

■ Our analysis of the record shows that defendant was not misled in making his defense. He does not suggest that his evidence was inaccurate or that he omitted any facts which would bear upon his guilt or innocence. (*People v. Simpkins* (1971), 48 Ill. 2d 106, 268 N.E.2d 386.) Defendant did not testify. His statements, introduced into evidence, state that he did not have *any* sexual contact with the victim. Defense counsel's opening statement was that defendant never had sexual relations with her. Closing argument followed a similar tack. As such, the variance did not mislead defendant in making his defense, and his convictions are not flawed by it.

■ Defendant next claims that the prosecutor made improper comments during closing argument. Defendant neither objected to any of those comments nor mentioned them in his post-trial motion. For this reason, we consider the issue waived. We also find that the alleged errors do not rise to the level of plain error as the comments did not deprive defendant of a fair trial. *People v. Lucas* (1981), 88 Ill. 2d 245, 430 N.E.2d 1091.

■■ Defendant's final contention is that the court erred in sentencing him for two counts of aggravated battery. The jury returned guilty verdicts on the charges of aggravated battery committed on both the victim and on her uncle. Defendant claims that the conviction for the aggravated battery on the victim was carved from the same act as the aggravated criminal sexual assault, and thus should be vacated. *People v. Bone* (1982), 103 Ill. App. 3d 1066, 432 N.E.2d 329.

The jury was instructed on two counts of aggravated criminal sexual assault. One count alleged that the defendant displayed a bludgeon in order to lead the victim to believe that it was a dangerous weapon. The other count stated that the victim suffered bodily harm. A general verdict of guilty was returned. It does not necessarily follow that the great bodily harm was the basis for the aggravated criminal sexual assault conviction.

The evidence showed that the defendant, in addition to striking the victim, wielded the pool cue. On this basis, the general verdict under the theory of displaying a weapon can be affirmed without regard to bodily harm. We also note that the evidence established that the victim was beaten repeatedly by defendant. Any one of these beatings would support a guilty verdict for aggravated battery while another would serve as the basis for the aggravated criminal sexual assault conviction. (*People v. Dixon* (1982), 91 Ill. 2d 346, 438 N.E.2d 180.) Under either theory, the jury's verdict is valid. "It is established that where the jury renders a general verdict, it is presumed to be based on any good charge to which the proof is applicable. [Citations.]" *People v. Feagans* (1983), 119 Ill. App. 3d 941, 950, 457 N.E.2d 459.

For the foregoing reasons, the circuit court of Will County is hereby affirmed.

Affirmed.

SCOTT, P.J., and HEIPLE, J., concur.