THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TERRY TAYLOR, Defendant-Appellant.

Third District   No. 3—85—0306

Opinion filed July 21, 1986.—Rehearing denied August 22, 1986.

Robert Agostinelli and Thomas A. Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

William Herzog, State's Attorney, of Kankakee (Terry A. Mertel, of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE WOMBACHER delivered the opinion of the court:

Defendant, Terry Taylor, was charged with murder, armed robbery, and attempted murder. Defendant's first trial on the charges resulted in a mistrial due to a hung jury. Upon retrial, defendant was convicted of the charges. Defendant waived his right to have a jury make the sentencing determination in a death penalty hearing. The trial judge declined to impose the sentence of death. Instead, defendant was sentenced to concurrent terms of 55 years on the murder, and 20 years each on the armed robbery and the attempted murder. Defendant appeals his convictions. We affirm.

As defendant does not challenge the sufficiency of the evidence against him, only those facts necessary for the purposes of this appeal will be presented. On the evening of March 4, 1984, two black men entered the Dunkin' Donuts shop in Kankakee. The shop owner and his brother were in the store with an employee. Two college students had previously entered. They were sitting near the entrance. No one in the shop could see the face of either black man. The taller of the two asked for change for a dollar bill from the owner's brother.

The man then pulled a gun and demanded the money in the register. The shorter man went behind the counter to get the money. A struggle ensued. The taller man shot the owner's brother. The owner and the employee came out from the back room. The gunman shot the employee. The two assailants fled. The employee died from the gunshot wound. The brother survived.

The State presented testimony from Patty Howard, defendant's girlfriend, and Melvin Fulton, the original codefendant. Charges against Fulton were nol-prossed in exchange for his testimony. He was, however, sent to prison on a parole violation based on his conduct in the incident. Howard informed police that defendant admitted committing the crime. The combination of Fulton's and Howard's testimony fully implicated defendant.

The defense presented witnesses to rebut Fulton's and Howard's

stories. The defense theory was that a man other than defendant helped Fulton in the robbery. Defendant did not testify.

Defendant was convicted and sentenced. He brings this appeal, raising many points.

The first issue we shall examine is whether the trial court's use of the *Witherspoon* test in *voir dire* prejudiced defendant. We decline to further consider the issue. Defendant's claim was based on *Grigsby v. Mabry* (8th Cir. 1985), 758 F.2d 226. That case, however, was reversed by the United States Supreme Court on appeal *sub nom.* (*Lockhart v. McCree* (1986), 476 U.S. ___, 90 L. Ed. 2d 137, 106 S. Ct. 1758). Our supreme court has also recently rejected such a claim in *People v. Collins* (1985), 106 Ill. 2d 237, 478 N.E.2d 267.

■ Defendant next contends that the prosecutor's use of peremptory challenges improperly kept blacks off the jury. He cites the recent case *Batson v. Kentucky* (1986), 476 U.S. ___, 90 L. Ed. 2d 69, 106 S. Ct. 1712, as being controlling. While *Batson* overruled the *Swain v. Alabama* (1965), 380 U.S. 202, 13 L. Ed. 2d 759, 85 S. Ct. 824, requirement of a showing of systematic exclusion of blacks, nothing in the majority opinion leads us to believe that the case holding applies retroactively. We also note that four justices did not think retroactive application was proper. *Batson v. Kentucky* (1986), 476 U.S. ___, ___, 90 L. Ed. 2d 69, 90, 106 S. Ct. 1712, 1725 (White, J., concurring); 476 U.S. ___, ___, 90 L. Ed. 2d 69, 97, 106 S. Ct. 1712, 1731 (O'Connor, J., concurring); 476 U.S. ___, ___, 90 L. Ed. 2d 69, 91, 106 S. Ct. 1712, 1731 (Burger, C.J., Rehnquist, J., dissenting).

We decline to give *Batson* retroactive application. In making the determination, the following criteria are analyzed: (a) the purpose to be served by the new standards; (b) the extent of the reliance on the old standards; and (c) the effect on the administration of justice of a retroactive application of the new standards. (*Solem v. Stumes* (1984), 465 U.S. 638, 643, 79 L. Ed. 2d 579, 587, 104 S. Ct. 1338, 1341-42.) The potential problems posed by retroactive application when examined under criteria (b) and (c) nearly mandate prospective application. "When a court has overruled a past precedent *** the reliance and effect factors in themselves 'have virtually compelled a finding of non-retroactivity.' [Citations.]" 465 U.S. 638, 646, 79 L. Ed. 2d 579, 589, 104 S. Ct. 1338, 1343.

We also note that our supreme court expressly relied upon *Swain* in its latest ruling on the issue (*People v. Gaines* (1985), 105 Ill. 2d 79, 88 473 N.E.2d 868). It is on the basis of this authority, and other such precedent, that the trial court did not allow defendant's motion to discharge the jury.

Defendant may have made the *prima facia* showing required in *Batson*; we do not decide the issue. However, we are not going to remand the cause for the trial court in order to allow the State's Attorney to explain, by neutral reason, why he excused the black veniremen. To do so would allow every defendant on either direct or collateral appeal to have his *voir dire* examined and reconstructed. This would be a massive waste of judicial resources. No explanation was required of the State's Attorney at the time of the trial. We will not penalize the State by reversing the case for not doing something that it was not required to do.

▮ The next two issues we shall examine deal with the jury instructions and verdict forms. The State claims that the errors were waived and do not amount to plain error. The first contention is that the jury was improperly instructed on attempted murder. The necessary mental state for attempted murder is that the defendant have the specific intent to kill. (*People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331.) The instant attempted-murder instruction stated that the defendant had to act with the intent to commit murder. The statutory definition of murder was given elsewhere in the instructions.

*People v. Roberts* held that an improper instruction on attempted murder, as in the present case, is subject to the waiver rule. However, the court stated that the rule does not apply "to *substantial defects* in the instructions *if* the *interests of justice require.*" (Emphasis in original.) (*People v. Roberts* (1979), 175 Ill. 2d 1, 11, 387 N.E.2d 331.) The exception to the waiver rule is applied in cases in which the evidence is closely balanced. 75 Ill. 2d 1, 14, 387 N.E.2d 331.

▮ Defendant claims that the instant case against him is closely balanced. While we do not agree with the State that the evidence is overwhelming, we do not think that this is a close case. The evidence against defendant was quite strong. While witnesses may have been impeached, certain elements still remain. Defendant had purchased a revolver (the same caliber as the murder weapon) before the incident; his accomplice identified him as the gunman; and his ex-girlfriend stated that he confessed the crime to her. Therefore, we shall not apply the exception to the waiver rule to this issue.

▮ Defendant's second contention deals with murder-verdict form. The jury was instructed on the three types of murder, intentional, knowing, and felony murder. However, the jury only received a general murder-verdict form. This was done over defense counsel's objection. Defendant claims the jury may have convicted him of felony murder and armed robbery. As such, the armed-robbery conviction would have to be vacated as the lesser included offense of felony mur-

der. The State cites the general rule that a finding of guilt is presumed to be based on any good count in an indictment to which the proof is applicable. (*People v. Feagans* (1984), 119 Ill. App. 3d 941, 457 N.E.2d 459.) Also, ambiguities in jury verdicts do not have to be construed in favor of a defendant. 119 Ill. App. 3d 941, 457 N.E.2d 459.

■ In the present case, the evidence shows that in shooting the victim, defendant could have done so with the intent to do great bodily harm. (Ill. Rev. Stat. 1983, ch. 38, par. 9—1(a)(1).) Defendant also could have acted knowing that his acts created a strong probability of great bodily harm. (Ill. Rev Stat. 1983, ch. 38, par. 9—1(a)(2).) A guilty verdict under either theory would not require the vacatur of an accompanying armed-robbery conviction. As such, defendant was not prejudiced by the use of a general-verdict form given over his objection.

■ Defendant also claims many instances of prosecutorial misconduct during closing argument. Again, the State raises a claim of waiver as most of the comments were not objected to. Defendant claims that the cumulative effect of the comments deprived him of a fair trial. He further asks us to examine the statement under Supreme Court Rule 615(a) regarding plain error. 87 Ill. 2d R. 615(a).

It is clear that prosecutors should refrain from improper argument (*People v. Harbold* (1984), 124 Ill. App. 3d 363, 464 N.E.2d 734), distorting the burden of proof (*People v. Witted* (1979), 79 Ill. App. 3d 156, 398 N.E.2d 68), or inflammatory conduct or argument (*People v. Thomas* (1974), 22 Ill. App. 3d 854, 318 N.E.2d 342). We first analyze whether it was error for the prosecutor to call defendant a "pimp." Defendant claims this was done to be an inflammatory comment and an attempt to play on the juror's passions. We do not believe so. We think the comment to be a fair comment based on reasonable inferences from the evidence.

We find no error in the comment. Both sides agree that Patty Howard, defendant's girlfriend, was a prostitute. There was evidence that defendant insisted that she work and give him the proceeds. That defendant was her pimp was a reasonable inference. Arguments based on facts or the reasonable inferences therefrom are within the scope of proper argument (*People v. Terry* (1984), 99 Ill. 2d 508, 460 N.E.2d 746) even if they reflect unfavorably on the accused (*People v. Turner* (1984), 127 Ill. App. 3d 784, 469 N.E.2d 368.) While inflammatory remarks are to be avoided, argument will not be limited merely because defendant was placed in a bad light. *People v. Mays* (1982), 91 Ill. 2d 251, 437 N.E.2d 633.

■ Defendant also complains that the prosecutor shifted the burden of proof and called attention to defendant's not testifying. The first comment in this area was that nothing rebutted Fulton's statement that defendant was the gunman. Defendant claims that this was an improper comment on his exercise of his right to remain silent. *People v. Lyles* (1985), 106 Ill. 2d 373, 478 N.E.2d 402.

Defendant's theory as far as Fulton's testimony is concerned was that another man was Fulton's accomplice. This was the main thrust of defense counsel's argument on this point. However, there was no evidence, other than Fulton's statements, on the identity of the gunman. A prosecutor may comment on the uncontradicted nature of the testimony. *People v. Skorusa* (1973), 55 Ill. 2d 577, 304 N.E.2d 630.

■ This can be done "even though defendant is the only one who could have contradicted it—provided it was not ' "intended or calculated to direct the attention of the jury to the defendant's neglect to avail himself of his legal right to testify." ' [Citation.]" (*People v. Lyles* (1985), 106 Ill. 2d 373, 390, 478 N.E.2d 402.) The comments in the present case were a legitimate response to the defendant's claim that someone else was Fulton's accomplice.

■ Likewise, defendant complains comments stating that defendant had only proved inconsistencies in the State's case were also improper in that they shifted the burden of proof. The comment was:

"What did the defense prove? They proved that there was [*sic*] inconsistencies. *** They didn't prove that Melvin Fulton or Patty Howard or any of our witnesses was [*sic*] unbelievable."

We agree with the State that the above statement was not an attempt to shift the burden of proof. Taken in context, the prosecutor was arguing the strength of the evidence and the credibility of the State's witnesses. This was in response to defense counsel's claim that Fulton and Howard, the State's key witnesses, were not believable because of the inconsistencies in their testimony. While the use of "proved" was unfortunate and not the best choice of words, it was not intended to shift the burden of proof. We also note that the jury was properly instructed as to the burden of proof. Thus, the prosecutor's wording, while unfortunate, was not improper.

■ Defendant also claims that another comment amounted to a claim that a post-trial conference with the attorneys could substitute for the jury's questions on the sufficiency of the evidence. (*People v. Martinez* (1979), 76 Ill. App. 3d 280, 395 N.E.2d 86.) The State claims that this was merely a proper response to defense counsel's claim that if a juror had wished that the prosecution had asked a question, that

wish amounted to reasonable doubt sufficient to acquit. The prosecutor had told the jury to follow the instructions and go on the evidence. He also stated that there was sufficient evidence to convict, and that he had presented all of it. The comment did not amount to an attempt to lessen the burden of proof.

Defendant contends next that an extremely lengthy passage of argument amounted to an inflammatory appeal to the jury's fears and prejudices. The statements merely amount to a zealous appeal for the fearless administration of the law. As such, the statements were not erroneous. *People v. Jones* (1982), 108 Ill. App. 3d 880, 439 N.E.2d 1011.

Defendant's last complained of comment was an improper response to defense counsel's argument about convicting the wrong man. Defense counsel asked the jury how they would feel if they had wrongly convicted defendant. The prosecutor replied, "If two years or three years or five years from now, you wake up \*\*\* and somebody else got killed along Court Street by Terry Taylor, what will you think then \*\*\*?" This comment was a proper use of invited comment. However, it was not promptly objected to. Prior to instructing the jurors, the trial judge and counsel conferred. At this point, defense counsel complained of the "law and order" argument by the prosecutor. Defendant's motion for a mistrial was denied. However, 45 minutes after deliberations had begun, the trial judge decided to instruct the jury to disregard the comment. Defendant's renewed request for a mistrial was denied.

Defendant does not complain of the trial court's added instruction to disregard. He instead complains that the statement was so prejudicial as to amount to plain error. We do not agree. The instruction to disregard, while not contemporaneous with the statement, helped ameliorate any prejudice that might have attached. This lone improper comment, with its prejudicial effect reduced, did not deprive defendant of a fair trial.

Defendant's final point of error is that the trial court erred in not appointing independent counsel to argue defendant's motion for a new trial. In the post-trial motion, defense counsel alleged, *inter alia*, that defendant did not receive effective assistance of counsel due to counsel's failure to make timely motions and objections. Thus, defendant argues that defense counsel operated under a *per se* conflict of interest at the post-trial motion, citing *People v. Krankel* (1984), 102 Ill. 2d 181, 464 N.E.2d 1045.

We note that *Krankel* has not been read to mandate a *per se* conflict in cases where a defendant alleges his counsel was incompetent.

(*People v. Mallette* (1985), 131 Ill. App. 3d 67, 475 N.E.2d 237; *People v. Jackson* (1985), 131 Ill. App. 3d 128, 474 N.E.2d 466.) However, we note the unique situation in the instant case, defense counsel has raised his own incompetence as an issue.

Defendant claims this is analogous to situations where one assistant public defender argues the ineffectiveness of another assistant from the same office. We think this case is more similar to cases where counsel is forced to argue his own incompetence when defendant raises the issue *pro se*. In such cases, a *per se* conflict does not exist. A conflict is determined by examining the underlying allegations of incompetence. *People v. Johnson* (1981), 98 Ill. App. 3d 228, 424 N.E.2d 610.

The instant allegation claimed the failure to make timely motions and objections. The standard of examining claims of ineffective assistance were announced in this State in *People v. Albanese* (1984), 104 Ill. 2d 504, 473 N.E.2d 1246. There our supreme court agreed with the United States Supreme Court in that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice *** that course should be followed." (*Strickland v. Washington* (1984), 466 U.S. 668, 697, 80 L. Ed. 2d 674, 699, 104 S. Ct. 2052, 2070.) The present allegations pertain to counsel's decisions not to object, decisions that go to the exercise of counsel's trial judgment and discretion. These grounds are insufficient to support an ineffectiveness claim. *People v. Johnson* (1981), 98 Ill. App. 3d 228, 424 N.E.2d 610.

For the foregoing reasons, the circuit court of Kankakee County is hereby affirmed.

Affirmed.

SCOTT, P.J., and STOUDER, J., concur.