THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE FOLEY, Defendant-Appellant.

First District (6th Division)   No. 1—89—0567

Opinion filed November 26, 1990.—Rehearing denied December 31, 1990.

Randolph N. Stone, Public Defender, of Chicago (Hugh Stevens, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Paul Gliatta, and Gigi A. Gilbert, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE LaPORTA delivered the opinion of the court:

Following a bench trial, defendant, George Foley, was convicted of two counts of criminal sexual assault and one count of aggravated criminal sexual abuse (Ill. Rev. Stat. 1985, ch. 38, pars. 12—13(a)(1), (a)(3), 12—16(d)). Defendant received concurrent terms of eight years for each criminal sexual assault conviction and a concurrent term of five years for aggravated criminal sexual abuse. On appeal, defendant contends that (1) the State produced insufficient evidence to prove him guilty beyond a reasonable doubt; (2) the trial court erred in considering improper evidence against him; and (3) two of his three convictions should be vacated because his actions constituted a single offense.

The evidence adduced at trial established that defendant was 49 years old during July and August 1985 and lived with the complainant, his stepdaughter, and her brother in a two-bedroom apartment in Chicago Ridge, Illinois. Defendant had adopted complainant sometime prior to her tenth birthday. Complainant's mother had died on March 13, 1985. Complainant, who was 14 years old during July and August 1985, slept in one bedroom, and her brother slept in the other bed-

room. Defendant slept on the living-room couch.

Complainant testified that the day after her brother went into the Audy Home, in the afternoon hours, she was alone with defendant in the apartment. She could not remember the exact date, but testified that it was sometime between July 23, 1985, and August 23, 1985. On that occasion, complainant was wearing a nightgown and underwear and was standing near the bathroom. Defendant was in her brother's room and asked her to come into the bedroom because he wanted to show her something. When she entered the bedroom, defendant was wearing a T-shirt and underwear and told her to lie on the bed. When she refused, defendant pushed her down on the bed and told her to take her clothes off. Complainant refused, and defendant pulled up her nightgown and pulled her underwear off.

Complainant testified further that as she struggled with him, defendant took off his underwear and started to touch complainant's breasts and vagina. Defendant first inserted his finger and then his penis into her vagina. Complainant was lying on her back on the bed, and defendant was lying on top of her. While he was having intercourse with her, defendant had one hand over complainant's mouth and the other hand near her stomach. Complainant tried to scream so that Karen, a friend and upstairs neighbor, would hear her. Defendant subsequently withdrew his penis and ejaculated on complainant's stomach.

Complainant testified that defendant then got up and acted as though nothing had happened. He said nothing to her, and complainant started crying and walked out of the room. Sometime later, defendant told her that if she told anyone about the incident he would kill her. Complainant stated that there were other occasions on which defendant hit her and had physical contact with her. On cross-examination, complainant testified that defendant had intercourse with her on more than one occasion.

On redirect examination, complainant described another incident. She testified that in August 1985 while her brother was still in the Audy Home, she was again alone in the apartment with defendant. Complainant had arrived home at about 10:30 p.m. and went directly into the kitchen to prepare a snack. Defendant was sitting naked on the living-room couch. Complainant did not know that defendant was undressed, and when she walked into the living room, he asked her to perform fellatio on him and offered to pay her for it. Complainant refused and said that defendant was crazy. He then pulled her over to him on the couch and told her to perform fellatio. Complainant resisted, and defendant pulled her nearer to him and again told her to

perform oral sex on him. Complainant eventually succumbed and performed fellatio on defendant. After defendant ejaculated on himself, complainant left the apartment and spent the night at the home of her friend Chrissy.

Complainant testified that she did not tell anyone about these incidents until June 1986 because she was afraid that defendant would kill her. She never went to a hospital or reported the incidents to the police and did not confide in her boyfriend until after they had been married. After these incidents, complainant ran away from home on several occasions, the last time being in the early part of June 1986. She had been away from home for five days and then turned herself in to the Hickory Hills police department. While at the police station, complainant told Officer Mary Ann Doherty that defendant had been abusing her and had been having physical contact with her. Complainant would not, however, divulge any details about this conduct because she feared that defendant would kill her. She told Doherty about the conduct because she knew that she would not be going back home with defendant. Complainant testified further that in 1987 she told a caseworker at The Harbor, a residential shelter for adolescent girls, that she had been raped and abused by defendant.

The testimony of Officer Mary Ann Doherty corroborated that of complainant. Doherty testified that when she asked complainant why she continually ran away from home complainant responded that it was because defendant had hit her and had intercourse with her after her mother's death. Doherty also stated that complainant said she didn't want to go home with defendant because he would kill her and because she didn't trust him and had been threatened by him. Doherty testified further that she advised juvenile officer Troy that complainant said defendant had physically and sexually abused her. After speaking with Doherty, complainant lived in two foster homes for some time and thereafter went to live at The Harbor.

Defendant presented the testimony of Peggy Roddy, a certified social worker for Worth Township Youth Bureau Services, who stated that she had consulted with defendant and complainant for approximately nine months from September 1985 to May 1986. Roddy saw defendant and complainant together for a part of each session and saw complainant alone for another part of each session. When she saw them together, complainant never exhibited any fear of defendant, and she never mentioned that she had been physically assaulted or sexually abused by defendant. Roddy stated that she had several clients who had been sexually abused, and she had very good success in soliciting that type of information.

Testifying on behalf of defendant, juvenile probation officer John Fei stated that he saw complainant approximately twice a month for 18 months between 1986 and 1987. He saw her at home or at school on a monthly basis, and defendant was frequently present when Fei saw her at home. When he saw complainant and defendant together, complainant never exhibited any fear of defendant, and Fei never observed any marks or bruises on her that would have indicated that she had been physically abused. Complainant never indicated to Fei that she had been sexually abused by defendant.

Detective Robert Troy of the Hickory Hills police department testified for the defense that on June 19, 1986, he spoke with complainant. Part of that conversation was in the presence of Officer Mary Ann Doherty. After the interview, Troy contacted the South Suburban YMCA Service Center. Mary Pat Hennessey, a counselor for that center, came to the station and interviewed complainant. Troy was present for a small portion of that interview, and thereafter he took complainant home to defendant and advised her to contact her counselor.

On rebuttal, the State called Laurie Ihde, a caseworker at The Harbor, the crisis shelter for adolescent girls. Ihde testified over defendant's objection that she conducted an intake interview with complainant on March 10, 1987. Ihde stated that when she asked complainant about her parents, complainant got very emotional over her mother, the anniversary of whose death was three days away. After Ihde told complainant that she would have to report it if complainant had been sexually abused, complainant stated that she had been sexually abused by defendant.

Defense counsel moved to strike Ihde's testimony as irrelevant and not rebutting. The court denied the motion, stating that her testimony was relevant and was in rebuttal to the evidence given by Roddy.

Upon considering all of the evidence, the court found defendant guilty of two counts of criminal sexual assault and one count of aggravated criminal sexual abuse and sentenced defendant to concurrent terms of eight years, eight years, and five years, respectively.

In denying defendant's subsequent motion for a new trial, the court stated that although Ihde's testimony was not actually a direct rebuttal of anything the defense witnesses said, it was a rebuttal of the fact that she had made no complaint of abuse to the defense witnesses.

We initially consider defendant's claim that the testimony of complainant was not clear and convincing and was insufficient to prove

his guilt beyond a reasonable doubt. We find this argument unpersuasive.

■■ A complainant's testimony need not be unimpeached, uncontradicted, crystal clear, or perfect to be clear and convincing. (*People v. Douglas* (1989), 183 Ill. App. 3d 241, 251, 538 N.E.2d 1335, 1341; *People v. Findlay* (1988), 177 Ill. App. 3d 903, 911, 532 N.E.2d 1035, 1041; *People v. Henne* (1988), 165 Ill. App. 3d 315, 323, 518 N.E.2d 1276, 1281.) Although complainant was unable to give the specific dates on which the offenses were committed, she testified that they occurred sometime between the beginning of July 1985 and the end of August 1985 and stated without hesitation that the first incident occurred the day after her brother went to the Audy Home. The inability to remember exact dates and times merely affects the weight to be given the testimony and, taken alone, does not create reasonable doubt. (*Douglas*, 183 Ill. App. 3d at 252, 538 N.E.2d at 1341; *People v. Sexton* (1987), 162 Ill. App. 3d 607, 612, 515 N.E.2d 1359, 1363.) If minor inconsistencies or discrepancies exist in the complainant's testimony but do not detract from the reasonableness of her story as a whole, the complainant's testimony may be found clear and convincing. *Douglas*, 183 Ill. App. 3d at 252, 538 N.E.2d at 1341; *Findlay*, 177 Ill. App. 3d at 911, 532 N.E.2d at 1041.

■ Contrary to defendant's claim, the complainant in the instant case testified clearly and in great detail as to the specific acts of sexual assault and abuse committed by defendant. She stated that the first incident occurred when defendant called her into her brother's bedroom. After he told her to lie on the bed and she refused, defendant pushed her down onto the bed and told her to take her clothes off. When she again refused, defendant pulled up her nightgown and pulled her underpants off. While complainant struggled, defendant removed his underwear and touched her breasts and vagina. He then inserted his finger and subsequently his penis into her vagina. While he was having intercourse with her, defendant had one hand over complainant's mouth and the other hand near her stomach. After this incident, defendant told complainant that he would kill her if she told anyone what he had done.

Complainant also testified that on another occasion defendant forced her to sit near him on the living-room couch and to perform fellatio on him. She stated further that she told no one about these incidents until June 1986 because she was afraid that defendant would kill her. This testimony was given without hesitation or equivocation and was unimpeached, and the trial court specifically found it to be credible. Defendant presented absolutely no evidence to contradict the

testimony of complainant. Rather, he introduced the testimony of Roddy and Troy, who merely stated that complainant had not told them of the incidents of sexual abuse by defendant.

■ Complainant's testimony cannot be rejected merely because she did not tell anyone of these incidents until June 1986. A delay in reporting incidents of sexual abuse may be reasonable where the victim's silence can be attributed to fear of the offender or to shame, guilt, and embarrassment felt by the victim. (*People v. Escobedo* (1986), 151 Ill. App. 3d 69, 83, 502 N.E.2d 1263, 1272.) Under such circumstances, a delay of several months in reporting incidents of sexual abuse will not detract from the reasonableness of a complainant's testimony. *Escobedo*, 151 Ill. App. 3d at 82-83, 502 N.E.2d at 1272.

■ Although complainant did not give Officer Doherty and Laurie Ihde detailed accounts of the defendant's acts of sexual abuse, their testimony does corroborate complainant's statement that the incidents occurred and were committed by defendant. In a bench trial, it is the province of the trial court to judge the credibility of witnesses, to determine the weight to be accorded their testimony, and to draw inferences from the testimony. (*People v. Jarvis* (1987), 158 Ill. App. 3d 415, 511 N.E.2d 813; *People v. Purnell* (1984), 126 Ill. App. 3d 608, 467 N.E.2d 1160.) In the case at bar, the trial judge specifically found the testimony of complainant credible and stated that he understood how her fear of defendant could preclude her from immediately reporting the offenses. Consequently, the evidence in the record supports the trial court's finding that defendant was guilty beyond a reasonable doubt.

We next address defendant's assertion that the trial court erred in considering improper rebuttal evidence. Defendant argues that the court erred in considering the testimony of Laurie Ihde offered in rebuttal to his claim that complainant's testimony must be rejected because she did not make a prompt complaint to Roddy, Troy, or to anyone else until June 1986, long after she said the incidents of sexual abuse had taken place. Defendant asserts that since the State's rebuttal evidence did not directly contradict, repel or disprove his claim, its admittance into evidence was error.

■ ■ Because Ihde's testimony does not directly contradict the testimony of Roddy and Troy, it appears that the standard for admitting rebuttal testimony was not entirely met and that some error was committed. Yet, it has been held that the decision to permit rebuttal testimony rests largely in the discretion of the trial court (*People v. Andrews* (1988), 172 Ill. App. 3d 394, 526 N.E.2d 628; *People v. Egan* (1978), 65 Ill. App. 3d 501, 382 N.E.2d 477), and that decision will not

be reversed on appeal unless the court has abused its discretion resulting in prejudice to the defendant (*Egan,* 65 Ill. App. 3d 501, 382 N.E.2d 477; *People v. Thornton* (1977), 54 Ill. App. 3d 202, 369 N.E.2d 358). In the instant case, the record does not reflect and defendant has not shown any prejudice suffered by him as a result of the admission of Ihde's testimony. The evidence established that complainant told Officer Doherty in June 1986 that defendant had sexually abused her, and the court found this evidence as well as complainant's testimony credible. Consequently, the evidence supported defendant's convictions regardless of the admission of Ihde's testimony. In light of the fact that defendant has not shown prejudice from the admission of this evidence, his convictions will not be set aside on this ground. See *Egan,* 65 Ill. App. 3d 501, 382 N.E.2d 477.

Defendant relies upon *People v. Ellison* (1980), 89 Ill. App. 3d 1, 411 N.E.2d 350, on *People v. Sepka* (1977), 51 Ill. App. 3d 244, 367 N.E.2d 138, and on *People v. Karmazinas* (1967), 80 Ill. App. 2d 322, 224 N.E.2d 287, in support of his argument. Yet, all of these cases involved trials by jury and are factually distinguishable from the case at bar. Thus, they are not controlling here.

Finally, we determine whether two of defendant's convictions should be vacated because his actions constituted a single offense. This claim is without merit.

■ The Illinois Supreme Court has determined that where a defendant commits more than one criminal act in a single episode or transaction, the State may prosecute for more than one offense unless the charges involve precisely the same physical act. (*People v. Segara* (1988), 126 Ill. 2d 70, 533 N.E.2d 802.) Thus, where the physical acts are distinct, the defendant can be convicted of more than one offense and concurrent sentences may be imposed. *Segara,* 126 Ill. 2d 70, 533 N.E.2d 802; *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838.

In the instant case, count I of the indictment charged defendant with criminal sexual assault in that he committed an act of sexual penetration upon the complainant who was under 18 years of age at the time the act was committed and defendant was a family member (Ill. Rev. Stat. 1985, ch. 38, par. 12—13(a)(3)). Count II of the indictment charged defendant with criminal sexual assault in that he committed an act of sexual penetration upon the complainant by the use of force or threat of force (Ill. Rev. Stat. 1985, ch. 38, par. 12—13(a)(1)). Count III of the indictment charged defendant with aggravated criminal sexual abuse in that he committed an act of sexual penetration upon the complainant who was at least 13 years of age but under 16 years of age and the defendant was at least five years

older than the complainant (Ill. Rev. Stat. 1985, ch. 38, par. 12—16(d)).

■ A "family member" is defined as "a parent, grandparent, or child, *** and includes a step-grandparent, step-parent or step-child." (Ill. Rev. Stat. 1985, ch. 38, par. 12—12(c).) The phrase "force or threat of force" is defined as "the use of force or violence, or the threat of force or violence, including but not limited to the following situations: when the accused threatens to use force or violence on the victim or on any other person, and the victim under the circumstances reasonably believed that the accused had the ability to execute that threat; or when the accused has overcome the victim by use of superior strength or size, physical restraint or physical confinement." (Ill. Rev. Stat. 1985, ch. 38, par. 12—12(d).) The term "sexual penetration" is defined as "any contact, however slight, between the sex organ of one person and the sex organ, mouth or anus of another person, *** including but not limited to cunnilingus, fellatio or anal penetration." Ill. Rev. Stat. 1985, ch. 38, par. 12—12(f).

■ The evidence established that defendant committed three separate and distinct acts of sexual penetration by inserting his finger and then his penis into complainant's vagina and by forcing her to perform an act of fellatio. In addition, defendant touched complainant's breasts. Consequently, defendant could properly be convicted of and sentenced for two counts of criminal sexual assault and one count of aggravated criminal sexual abuse. *Segara*, 126 Ill. 2d 70, 533 N.E.2d 802; *King*, 66 Ill. 2d 551, 363 N.E.2d 838.

■ The type of sexual penetration is not an element of the offense, and its inclusion in the indictment is merely surplusage. (*People v. Taranto* (1954), 2 Ill. 2d 476, 119 N.E.2d 221; *People v. Tanner* (1986), 142 Ill. App. 3d 165, 491 N.E.2d 776; *People v. Young* (1973), 12 Ill. App. 3d 310, 297 N.E.2d 578.) If the statutory language used describes specific conduct, it is unnecessary for the indictment to specify the exact means by which the conduct was carried out. (*People v. Wisslead* (1985), 108 Ill. 2d 389, 484 N.E.2d 1081.) The State need only prove that *a* type of sexual penetration occurred beyond a reasonable doubt. *Tanner*, 142 Ill. App. 3d at 169, 491 N.E.2d at 778.

■ Each count in the indictment here charged defendant with sexual penetration, the specific conduct prohibited in the relevant statutes, and it was unnecessary for the indictment to specify the exact means by which the sexual penetration was carried out. Consequently, the indictment's reference to sexual penetration through contact between defendant's penis and complainant's vagina was merely surplusage and need not have been proved for defendant to be con-

victed of the offenses charged. In light of the evidence that defendant had committed three separate and distinct acts of sexual penetration upon the complainant, the trial court properly found defendant guilty of two counts of criminal sexual assault and of one count of aggravated criminal sexual abuse.

For the forgoing reasons, the judgments of the circuit court of Cook County are affirmed.

Affirmed.

EGAN and RAKOWSKI, JJ., concur.