THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIAM E. ROBERTS, JR., Defendant-Appellant.

Fourth District   Nos. 13921, 13922 cons.

Opinion filed April 14, 1977.

Richard J. Wilson, of State Appellate Defender's Office, of Springfield, for appellant.

William J. Scott, Attorney General, of Springfield (James B. Zagel, Jayne A. Carr, and Bruce D. Locher, Assistant Attorneys General, of counsel), for the People.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

Defendant William E. Roberts, after entering guilty pleas to two charges of burglary, was sentenced to two concurrent 30-month periods of probation with the condition that he serve 185 days of periodic imprisonment. On October 21, 1974, a petition was filed to revoke defendant's probation in both cases; and, subsequently, the Illinois authorities learned that on December 30, 1974, defendant had been convicted and sentenced on a separate charge in the State of Washington. Then on February 4, 1976, defendant was advised that the Washington authorities had received an Illinois detainer warrant and a demand for custody in order to conduct a probation revocation hearing.

On March 15, 1976, defendant filed a motion to dismiss the petition to revoke his probation. It alleged that defendant had been prejudiced by the State's failure to return him from incarceration in Washington for a prompt hearing on the petition to revoke his probation. The motion alleged that:

"A detainer has been placed against me at the Washington State Reformatory, where I am now confined, on the basis of the above charges. A detainer makes parole planning virtually impossible, and prohibits me from any participation in the furlough program here in Washington."

On March 31, 1976, a hearing was held on defendant's motion at which the State outlined the good faith efforts it had made to expedite the hearing on the petition to revoke defendant's probation. Defendant's motion to dismiss was denied and that ruling is not an issue in this appeal.

On June 16, 1976, the hearing was held on the petition to revoke defendant's probation. It was shown that as a condition of probation defendant was to have served periodic imprisonment consisting of all weekends between August 19, 1974, and December 22, 1974. Defendant's probation officer testified that this condition had not been excused and testimony of the sheriff established that defendant had only served two weekends in jail during the above period. The trial court found defendant in violation of the terms of his probation—revoked it—and, after a sentencing hearing, sentenced defendant to concurrent terms of 1 to 3 years and 1½ to 6 years' imprisonment.

Defendant's sole contention on appeal is that he was "in custody" for purposes of section 5—8—7(b) of the Unified Code of Corrections (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—7(b)) during the period that a detainer was lodged against him while he was incarcerated in the Washington State penitentiary system. Section 5—8—7(b) provides:

> "The offender shall be given credit on the maximum term and the minimum period of imprisonment for time spent in custody as a result of the offense for which the sentence was imposed."

Defendant maintains that he was entitled to sentence credit for the period between February 4, 1976, when a detainer was lodged, and June 7, 1976, the day he was returned to Illinois for the hearing on the petition to revoke his probation. While defendant admits that his incarceration in Washington was due to his conviction in that State, he argues that "custody" in section 5—8—7(b) contemplates lesser restraints than confinement. Defendant cites three reasons in support of this argument: A detainer (1) makes programming decisions difficult; (2) makes parole planning virtually impossible; and (3) prohibits his participation in the Washington furlough program.

However, defendant's own affidavit indicates that he was in segregation since February 13, 1975, and scheduled for parole on June 1, 1976. These admissions tend to show that the detainer had no effect on the programming or parole decisions made in his behalf. Whether the detainer could have or did prejudice defendant's chances with respect to the Washington furlough program is a question we have no basis for deciding, yet defendant's affidavit does not allege that he was otherwise eligible for that program.

In *People ex rel. Morrison v. Sielaff* (1974), 58 Ill. 2d 91, 316 N.E.2d 769, the Illinois Supreme Court interpreted the term "in custody" as used in section 5—8—7(b) and held that time spent on bail did not constitute time spent "in custody" under that section. In *Sielaff*, the court distinguished *Hensley v. Municipal Court* (1973), 411 U.S. 345, 36 L. Ed. 2d 294, 93 S. Ct. 1571, a case which defendant relies on here, by saying that *Hensley* broadly construed "custody" for purposes of the Federal habeas corpus law. They expressly held that *Hensley* was not controlling authority in the

construction of the statutory provision at issue in *Sielaff*. We feel that such reasoning would apply as well to distinguish *Jones v. Johnston* (D. C. Cir. 1976), 534 F.2d 353, the case defendant principally relies on in this appeal.

■■ In *Jones*, the District of Columbia Court of Appeals held that a parole violator warrant lodged as a detainer represents sufficient "custody" of a parolee-prisoner to support habeas corpus jurisdiction under 28 U.S.C. § 2241. (534 F.2d 353, 357.) However, like the court in *Sielaff*, we feel that here, faced with interpretation of an Illinois statute, a Federal court's construction of the term "in custody" for purposes of habeas jurisdiction is not controlling. Analysis of the *Jones* case discloses several reasons why the District of Columbia Court of Appeals interpreted "in custody" broadly. First, without a finding that the habeas petitioner was "in custody" under 28 U.S.C. § 2241, the Federal court would be without jurisdiction to reach the merits of the case. Moreover, the court's main concern in *Jones* was seeing that the prisoners got a prompt hearing on the petitions to revoke their parole. The prisoners there had sought prompt hearings, yet the government argued that, though a hearing and final determination were required, it could be postponed until the intervening incarceration terminated. For prisoners in *Jones*, this could mean having a pending detainer warrant against them for years while serving their intervening sentences. This practice prejudiced defendants already in prison since it prevented the possibility that defendants' sentences resulting from parole revocation would be allowed to run at least partially concurrent with the sentence for intervening offense. Second, the court stressed that delaying the hearing might impair the accused's ability to present a defense. Third, should a defendant be taken into custody once his intervening sentence had expired pending the parole board's determination, in the event their decision was not to revoke probation, defendant would have been incarcerated for a period of time without any justification. The concern for defendants' access to privileges and rehabilitative programs during the intervening sentence was only one of the court's several concerns in *Jones*.

In any event, there is considerable disagreement even among Federal circuit courts concerning the interpretation of the term "in custody" for purposes of 18 U.S.C. § 4207. Both the Fifth and Tenth Circuits have held that a Federal parolee is not taken into custody until after the parole revocation warrant has been executed. (*Small v. Britton* (10th Cir. 1974), 500 F.2d 299; *Cook v. United States Attorney General* (5th Cir. 1974), 488 F.2d 667, *cert. denied*, 419 U.S. 846, 42 L. Ed. 2d 75, 95 S. Ct. 81.) These cases construe "in custody" not to mean the mere issuance of a detainer warrant but rather the situation where defendant is actually retaken upon the warrant.

In this same vein, this court has held that under section 5—8—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—8—4(f)), which requires consecutive sentencing for offenses committed while the offender was "committed" to the Department of Corrections, the term "committed" means offenses which take place while the offender is *in custody, confined,* or *held* by the Department. It does not contemplate the situation where defendant is on parole at the time he commits the crime. (*People v. Griffith* (1975), 26 Ill. App. 3d 405, 325 N.E.2d 392.) *Griffith* is analogous to the present case in that there the court interpreted the term "committed" to mean *confinement* and not the lesser restrain of parole.

As *Sielaff* points out, the Unified Code of Corrections does not specifically define the meaning of "in custody." Yet, as the case notes, custody when construed as it is used in other sections of the Code, relates to confinement. (58 Ill. 2d 91, 93-94, 316 N.E.2d 769, 770-71.) Also, commentary to section 5—8—7 supports the view that custody means no less than confinement.

> "This section * * * gives full credit for time served in custody as a result of the offense for which the sentence was imposed. This would apply irrespective of where the offender was confined and would apply to custody outside of the State." Ill. Ann. Stat., ch. 38, par. 1005—8—7, Council Commentary, at 514 (Smith-Hurd 1973).

■■ As we read this commentary and the statute itself, it contemplates credit given for time served in custody, whether in Illinois or in other States, *as a result* of the offense for which the sentence is imposed. We believe it would thwart the plain meaning of section 5—8—7(b) to give a defendant credit for being "in custody" for his confinement on the Washington charge since such was not "*a result* of the offense for which the sentence was imposed." (Emphasis added.) (Ill. Rev. Stat. 1975, ch. 38, par. 1005—8—7(b).) We believe that since defendant's confinement in Washington was on a wholly unrelated charge, to give him credit for time served there while the Illinois detainer was pending would be giving him a windfall not intended by the statute.

For the foregoing reasons, we held that for purposes of section 5—8—7(b) a person is not "in custody" during the period a detainer was lodged against him while incarcerated in another State's prison as a result of a crime committed there.

Affirmed.

MILLS and REARDON, JJ., concur.