THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MARK E. GARDNER, Defendant-Appellant.

Third District   No. 3—87—0511

Opinion filed August 3, 1988.

Timothy M. Gabrielsen, of State Appellate Defender's Office, of Springfield, for appellant.

John A. Barra, State's Attorney, of Peoria (Terry A. Mertel, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE SCOTT delivered the opinion of the court:

In the early morning hours of November 18, 1985, Paul and Rosetta Paetsch, husband and wife, had fallen asleep while watching television in their home near Chillicothe, Illinois. Paul was awakened at approximately 2:30 a.m. by an intruder, who, with a companion, had entered their home. The next three hours were to be a period of terror for Paul and Rosetta. The two intruders were wearing ski masks and referred to each other as "Shawn" and "Gary." Subsequent events were to disclose that the intruder Gary was in fact the defendant, Mark E. Gardner. With knives being held to the throats of Paul and Rosetta, the couple were bound. The defendant then asked the couple if they had any money in their home. Rosetta indicated that she had money in her purse. Rosetta would remember that the voice of the defendant was "raspy," while that of his companion was "softer and less frantic."

The defendant then informed Paul that he and his companion Shawn were going to take Rosetta on a tour of the house. Both intruders then took Rosetta upstairs. Rosetta was undressed, and with

a knife being held to her throat, while she was lying on the floor, the defendant attempted to have intercourse with her. The defendant was unable to effect a penetration and then forced Rosetta to bend over a chair and while in this position penetration was effected and intercourse occurred during which the defendant ejaculated.

After Rosetta dressed herself she returned to the downstairs, where she and her husband were tied together. The defendant and his accomplice conducted a search of the house and during the course of the search Rosetta heard the accomplice refer to the defendant as "Mark" or "Mike."

The defendant then left the residence and ransacked two parked automobiles. Paul heard leaves rustling in the grass and determined that the intruders had departed. Approximately 10 minutes later Paul and Rosetta had freed themselves to an extent that they were able to hop to a neighbor's house, where the State Police were called.

It was later determined by Paul and Rosetta that in addition to the $800 taken from Rosetta's purse a number of other personal items were missing, to wit, jewelry, including a sapphire ring, a camera and a flashlight.

Less than a month later the defendant was arrested in the State of Arkansas for criminal offenses committed in that State. Some of the items taken from Paul and Rosetta Paetsch were found in the defendant's possession by the Arkansas law enforcement officers. On December 20, 1985, the defendant, while incarcerated in Arkansas, was questioned by Agent Frank Walter of the Illinois State Police. The defendant admitted and confessed to being one of the two men who perpetrated the crimes in the Chillicothe area of which Paul and Rosetta Paetsch were the victims.

After trial by jury the defendant was convicted of home invasion, armed robbery, and two counts of aggravated criminal sexual assault. The court imposed sentence on all charges and found that the defendant was eligible for both extended terms and consecutive sentences. The defendant was sentenced to an extended term of 60 years for home invasion and a consecutive term of 30 years for one count of aggravated criminal sexual assault, said terms to be served concurrently with an additional term of 90 years' imprisonment consisting of an extended term of 60 years for armed robbery and a consecutive term of 30 years for the other count of aggravated criminal sexual assault.

The defendant has raised five issues in this appeal. In considering and determining the issues, additional facts will be set forth as the same become pertinent and necessary.

Factual background as to the first issue is that the defendant was

tried and convicted for a triple murder in Arkansas. Rosetta Paetsch was a witness for the State at the defendant's sentencing hearing. While waiting to testify, Rosetta overheard the defendant talking to his attorney. She then informed the authorities that she could identify the defendant as the individual called "Gary" who invaded her home and raped her.

■ The defendant argues that Rosetta's identification of the defendant as "Gary" was the result of an unconstitutional, suggestive, one-person showup. The defendant attempts to raise an issue which is not properly before this court. The defendant never objected to the testimony of Rosetta during his trial, nor did he raise any such issue in his post-trial motion. The issue has been waived by the defendant. *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

The defendant next argues that he was not proved guilty beyond a reasonable doubt of two counts of aggravated criminal sexual assault when the complaining witness testified that her assailant penetrated her vagina with his penis but one time.

■ The defendant acknowledges that Rosetta testified that the defendant forced her to bend over a chair and from behind entered her vagina with his penis. The defendant apparently concedes that this conduct established one count of aggravated criminal sexual assault. He denies, however, that he committed any additional act of sexual assault. The record belies this assertion of the defendant. Prior to the sexual acts which involved the use of a chair, the victim Rosetta was led by the defendant and his accomplice to the upstairs portion of her home. She was forced to lie down and was then undressed. The testimony of the victim as to what occurred next is as follows:

"PROSECUTOR: Then what happened?
WITNESS: Then the one called Gary said, 'Open your legs.' I didn't and he stuck the knife to my neck again, and tried to enter me and couldn't.
PROSECUTOR: His penis?
WITNESS: Yes.
PROSECUTOR: And he tried to enter your vagina?
WITNESS: Yes."

The defendant's first attempt to penetrate the victim's vagina, albeit unsuccessful, was nevertheless a separate act of sexual penetration sufficient to support a second aggravated criminal sexual assault conviction. Unlike the crime of rape, the offense of criminal sexual assault does not require physical penetration of a victim's vagina. Sexual penetration is defined as any contact, however slight, between the sex organ of one person and the sex organ of another person. Ill.

Rev. Stat. 1985, ch. 38, par. 12—12(f).

Even though the acts of the defendant against the victim occurred within a short span of time, and his two sexual assaults of the victim constitute the crimes of aggravated criminal sexual assault, we note that they did not result from the same mode of operation. After the first assault the defendant found it necessary to use a prop, namely a chair, in order to penetrate the victim.

■ The defendant further argues that the closing statement constituted reversible error. The defendant first objects to the prosecutor's statement in closing argument that the defendant raped the victim and then made her stand up while he raped her again. Having determined that the defendant did in fact commit aggravated criminal sexual assault twice, we find little merit in his objection to the prosecutor's remarks. We will not address this argument of the defendant since the same is waived. The defendant did not object to this statement at trial or in his post-trial motion. Such failure results in a waiver of the issue. *People v. Tanner* (1986), 142 Ill. App. 3d 165, 491 N.E.2d 776.

■ The defendant objects to other statements by the prosecutor; however, the record discloses that such comments were invited or provoked by the defendant. We do not deem it necessary in the instant case to make a *cause celebre* of the defendant's objections to the prosecutor's remarks made during closing argument. The complained-of comments were harmless. The evidence against the defendant was overwhelming. He confessed to the crimes in question and his footprint was found in the victims' home. It is incredible to conclude that the comments of the prosecutor affected the jury's determination.

■ The defendant next argues that the trial court erred in considering letters written by the victims, Mr. and Mrs. Paetsch, and which were attached to the presentencing report.

The defendant argues that the letters somehow set forth or divulged personal traits of the victims which were not relevant to the question of a proper sentence. The defendant's argument has no merit but we need not discuss the frailty or inapplicability of his argument, since any objections the defendant may have were waived. At the sentencing hearing the defendant and his counsel indicated that they had read the presentence report and that they had no corrections, deletions or additions to make regarding the same. The defendant not only did not object to the report but accepted the same as proper. He may not complain in this court about what he approved in the trial court.

■ Lastly, the defendant argues that this case should be remanded to the trial court so a corrected mittimus can be issued which

would reflect a sentencing credit of 574 days, which is the time defendant remained in custody pending trial. The State agrees that this case should be remanded for a mittimus reflecting sentencing credit but disagrees with the defendant's computation of 574 days of credit. The defendant was arrested in Arkansas because of three murders he committed in that State. The defendant was subsequently convicted for the murders and sentenced to death.

A defendant is not entitled to credit for time spent in custody while incarcerated in another State as the result of a crime committed there, even if a detainer warrant is served on the defendant in that State. (*People v. Roberts* (1977), 47 Ill. App. 3d 524, 362 N.E.2d 106.) A defendant is also not entitled to credit for time served while incarcerated in another State for the time between the lodging of detainer against him and the time he waives extradition. *People v. Tucker* (1985), 138 Ill. App. 3d 503, 485 N.E.2d 1290.

■ It cannot be gleaned from the record in this case as to when or how the defendant was returned to Illinois. The record does not disclose when the defendant was held in Arkansas on the three murder charges.

We agree with the State that it is necessary that this case be remanded to the trial court for the limited purpose of determining when the defendant was held in Arkansas for the offenses in the instant case and not for the murder charges. A determination should be made for that period of time from the date he waived extradition or was extradited from Arkansas to Illinois. With such information and such other relating to sentencing, the trial court can determine the proper sentencing credit.

For the reasons set forth the convictions of the defendant and the sentences imposed thereon by the circuit court of Peoria County are affirmed. The case is, however, remanded to said circuit court for determination of the proper sentencing credit.

Affirmed but remanded with directions.

STOUDER, P.J., and HEIPLE, J., concur.