THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DALE R. WARREN, Defendant-Appellant.

Fifth District   No. 5—88—0498

Opinion filed August 28, 1991.

Daniel M. Kirwan and E. Joyce Randolph, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Michael Kiley, Special Prosecutor, of Shelbyville (Kenneth R. Boyle, Stephen E. Norris, and Debra A. Buchman, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE HOWERTON delivered the opinion of the court:

A Christian County jury convicted defendant of 12 counts of sexual offenses against his teenage stepdaughters. We affirm.

Defendant's two stepdaughters alleged that defendant had sexually molested them. Thereafter, the police served defendant with a court order instructing him to stay away from his stepdaughters.

The next day defendant went to the house of the officer who served the court order, to talk about the complaints. The officer told defendant that he could not speak to him unless he gave him *"Miranda"* warnings. Defendant asked how many years he could get. The officer replied, "Get an attorney."

The day after, the officer asked defendant to come to the Christian County sheriff's office. Defendant came. The officer gave him the warnings required by *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602.[1] Defendant agreed to answer general questions concerning his family and stepdaughters, but when the officer showed defendant his stepdaughters' complaints, defendant refused to answer any questions.

After testifying on direct and cross-examination, the State redirected the officer:

"Q. Mr. Rogowski, on cross-examination, counsel asked you about repeated denials. Let me direct your attention to March 26 when you served the papers on the defendant. At that time, did he deny any involvement with the girls?

A. No.

Q. Let me direct your attention now to the March 27 meeting at your house. Did you ask him any questions at that time?

A. No.

Q. Did he deny any involvement after having a day to read these papers?

A. No.

---

[1] Ironically, since defendant had voluntarily complied with a request to come to the station and was free to leave at any time (see *Oregon v. Mathiason* (1977), 429 U.S. 492, 50 L. Ed. 2d 714, 97 S. Ct 711), the police had no duty to advise defendant of the warnings contained in the *Miranda* decision.

Q. Now, let me direct your attention to March 28 at the Christian County sheriff's office. I will ask you, was that the first time that he denied any involvement with the girls?

A. Yes.

Q. Now, you have indicated he said he trusted the girls?

A. Yes.

Q. Subsequent to his reading the statements, did he make any statement with regards to trusting the girls at that point?

A. I can't recall.

Q. Mr. Rogowski, at the Christian County sheriff's office, after reading the statements, what, if any, questions did the defendant avoid answering or evade answering?

A. If he did fondle or have intercourse with any of the girls.

Q. When you say he avoided or evaded those answers, can you be more specific, please?

A. He would just stop talking. He wouldn't go any further."

In closing argument the prosecutor reviewed the police officer's testimony, referring to defendant's silence:

"Rogowski talked about his impression of the defendant. No eye contact, very nervous. Certainly it is a situation that would get anybody nervous but there was a change there. He wouldn't answer directly."

Defendant argues that the only purpose the prosecution had in commenting on his silence was to give the jury the impression that defendant was hiding behind his "constitutional rights," the inference being that he was avoiding the truth of the allegations. Defendant argues that such misuse of the invocation to remain silent violates the fifth amendment of the United States Constitution (U.S. Const., amend. V). See *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240.

The State maintains that defendant has waived any objection to the testimony of Officer Rogowski and the closing argument because no objections were made at trial or in the post-trial motion. (*People v. Friesland* (1985), 109 Ill. 2d 369, 488 N.E.2d 261; *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.) However, Illinois Supreme Court Rule 615(a) provides that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." (134 Ill. 2d R. 615(a).) There is no question in this case that the State made use of defendant's silence. (See *People v. Mills* (1968), 40 Ill. 2d 4, 237 N.E.2d 697.) We address whether use of defendant's prearrest, post-*Miranda* warning silence was error.

## I

*Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, held that post-arrest, post-*Miranda* warning silence cannot be used to impeach a defendant. The rationale is that it is fundamentally unfair for the government to impliedly promise that silence after arrest carries no penalty, and then make use of that silence. See also *Wainwright v. Greenfield* (1986), 474 U.S. 284, 88 L. Ed. 2d 623, 106 S. Ct. 634.

In the case at bar, defendant's silence was not used to impeach, but was used in the State's case in chief and closing argument. Although *Doyle* involved impeachment, there is no question that the principle applies to the case at bar. See, *e.g.*, *Wainwright v. Greenfield* (1986), 474 U.S. 284, 88 L. Ed. 2d 623, 106 S. Ct. 634 (which held that use of post-arrest, post-*Miranda* warning silence to prove defendant sane was a violation of the due process clause of the fourteenth amendment to the Constitution of the United States).

■■ The issue before us, then, is whether the fourteenth amendment prohibits the use of prearrest, post-*Miranda* warning silence in the State's case in chief and closing argument.

The United States Supreme Court has yet to deal with this issue,[2] but other courts have held that the use of prearrest, post-*Miranda* warning silence violates the due process clause of the Constitution of the United States. See *Fencl v. Abrahamson* (7th Cir. 1988), 841 F.2d 760; *State v. Fencl* (1982), 109 Wis. 2d 224, 325 N.W.2d 703; *State v. Plourde* (1988), 208 Conn. 455, 545 A.2d 1071.

In *Fencl v. Abrahamson*, the prosecutor used defendant's prearrest, post-*Miranda* warning silence in his opening statement, his case in chief, and his closing argument. The United States Court of Appeals, Seventh Circuit, held that all three uses violated defendant's right to due process secured by the fourteenth amendment.

In *State v. Fencl*, the Wisconsin Supreme Court, considering the same issue, focused on the giving of the warnings, not on the arrest, and condemned the use of prearrest, post-*Miranda* warning silence, saying:

---

[2]The United States Supreme Court has indicated broad application of *Doyle*, saying in *Anderson v. Charles* (1980), 447 U.S. 404, 65 L. Ed. 2d 222, 100 S. Ct. 2180, that "the Due Process Clause of the Fourteenth Amendment prohibits impeachment on the basis of defendant's silence following *Miranda* warnings *** [and] bars the use against a criminal defendant of silence maintained after receipt of government assurances." 447 U.S. at 407-08, 65 L. Ed. 2d at 226, 100 S. Ct. at 2181-82.

"The *Doyle* decision was based upon the fact that governmental action (i.e., giving the *Miranda* warning) encouraged or induced silence by assuring the defendant that such silence is protected. Receipt of the *Miranda* warning is the important factor in the *Doyle* analysis, not whether the defendant has been arrested. Therefore, the *Doyle* rationale protects post-*Miranda* silence whether occurring before or after arrest." *State v. Fencl*, 109 Wis. 2d at 234, 325 N.W.2d at 710.

In *Plourde,* the Connecticut Supreme Court likewise held that the *Doyle* rationale applied to prearrest, post-*Miranda* warning silence, ruling that the unfairness of using defendant's silence following *Miranda* warnings is not mitigated by the absence of custody. It noted that "silence in the wake of *Miranda* warnings is 'insolubly ambiguous' and consequently of little probative value *** [and] 'while it is true that the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings.' " *State v. Plourde* (1988), 208 Conn. 455, 465-66, 545 A.2d 1071, 1077, quoting *Doyle,* 426 U.S. at 617-18, 49 L. Ed. 2d at 421-22, 96 S. Ct. at 2244-45.

We follow these decisions and hold that using a defendant's prearrest, post-*Miranda* warning silence, unless invited, violates due process.

## II

We next address whether the use of defendant's silence was harmless beyond a reasonable doubt. (*Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.) In so doing, we look to five factors: (1) the intensity and frequency of the references; (2) which party elected to pursue the line of questioning; (3) the use to which the prosecution put the silence; (4) the trial judge's opportunity to grant a motion for a mistrial or to give a curative instruction; and (5) the quantum of other evidence indicative of guilt. *Phelps v. Duckworth* (7th Cir. 1985), 772 F. 2d 1410, 1413.

■ Our review of the record convinces us that there is no reasonable likelihood that the reference to defendant's silence contributed to his conviction. Defendant's stepdaughters testified explicitly about defendant's sexual advances and conduct. The elder of the two sisters testified that she told her mother of defendant's abuses when she learned from her younger sister that defendant had begun to abuse her. This testimony was corroborated by the younger sister. Reference to defendant's silence was brief. We firmly believe that the jury would have convicted defendant absent the improper reference to defend-

ant's silence, and thus we rule that the use of defendant's silence was harmless beyond a reasonable doubt. The circuit court is affirmed.

## III

Next, defendant argues that the circuit court erred by allowing the State's expert witness to testify to sexual abuse accommodation syndrome because the State laid no foundation establishing the reliability of the syndrome.

■ Generally, the proponent of the evidence has the burden of establishing to the court that a theory is accepted by experts in the field. However, unless the opponent objects to the admissibility of the evidence on grounds that the foundation is faulty, the circuit court is not given any opportunity to rule.

Here, defendant did not object at trial, nor did he include this objection in his post-trial motion. Failure to raise an issue at trial and in post-trial motion constitutes waiver of the issue, absent plain error. *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

Defendant requests that if we find the issue waived, we consider it waived only through the ineffective assistance of defense counsel. We decline to do so. Assistance of counsel will be deemed ineffective if counsel's performance was outside the wide range of professionally competent representation and but for those deficiencies, there is a reasonable probability that the outcome of the trial would have been different. (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052.) The record demonstrates that counsel vigorously presented a defense and argued defendant's positions to the jury.

## IV

■ Defendant argues that permitting a child abuse consultant to testify as an expert was improper because she was not a psychiatrist, behavioral psychologist, or physician, as required by section 115—7.2 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 115—7.2). We agree with defendant. It was improper for the circuit court to allow her to testify. The statute is plain and unambiguous, admitting no other interpretation: only a psychiatrist, behavioral psychologist, or physician can testify. Not every error, though, will require reversal of a judgment. New trials should be ordered only when evidence improperly admitted appears to have affected the outcome of the trial. (*Tzystuck v. Chicago Transit Authority* (1988), 124 Ill. 2d 226, 529 N.E.2d 525.) Here, the circuit court allowed the witness to testify for the limited purpose of explaining the character traits gen-

erally found in abused children; she also testified that the characteristics and behavior of defendant's stepdaughters were consistent with victims who suffer from abuse accommodation syndrome. She offered no medical or psychological diagnosis. She did not offer any testimony concerning any of the acts performed against the stepdaughters or who may have perpetrated the abuse. She focused strictly on the behavior displayed by the stepdaughters as related to post-traumatic stress syndrome. We are also mindful that the statute has since been amended so that now, the witness need not be either a psychiatrist, behavioral psychologist, or physician to be qualified to testify, but only an expert, qualified by the court. (See Pub. Act 85—1279, eff. Jan. 1, 1989 (amending Ill. Rev. Stat. 1987, ch. 38, par. 115—7.2).) Because the amended statute deals with the admission of evidence, it is procedural in nature and would be applicable upon retrial of defendant. Considering the witness' qualifications, she more than likely would be allowed to testify upon remand. Thus, there is essentially no reason to remand for a new trial because in view of the statutory change, the witness' testimony would be allowed on retrial, rendering the error harmless.

## V

█ Defendant argues he was denied a fair trial by introduction of hearsay. Defense counsel made no objection. This issue is waived. *People v. Enoch* (1988), 122 Ill. 2d 176, 522 N.E.2d 1124.

## VI

Defendant contends he was not proven guilty of count VII of the indictment, which charged him with criminal sexual assault, because there was no evidence of penetration of his finger into the stepdaughter's vagina in February 1987 as alleged.

█ Defendant was charged with criminal sexual assault in that in February of 1987 he placed his finger into the sex organ of the victim. The testimony of the minor victim was that in February 1987 defendant touched her vagina over her shorts. The statute states that any intrusion no matter how slight into a person's sex organ by another person is sufficient to be termed sexual penetration. (Ill. Rev. Stat. 1987, ch. 38, pars. 12—13(a)(3), 12—12(f); *People v. Gardner* (1988), 172 Ill. App. 3d 763, 527 N.E.2d 155.) Therefore, we hold that the evidence supports the conviction on count VII.

## VII

█ Defendant was convicted of two counts of aggravated crimi-

786

nal sexual abuse and two counts of battery based on the same two incidents of fondling the victim's breast. Since the law does not allow multiple offenses to be carved from the same act (*People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838), defendant's convictions and sentences for battery must be vacated.

We vacate in part and affirm in part.

Affirmed in part; vacated in part.

WELCH and GOLDENHERSH, JJ., concur.