THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES W. DAVIS, Defendant-Appellant.

Fourth District   No. 4—03—0518

Argued March 16, 2005.—Opinion filed April 18, 2005.

Charles M. Schiedel and Lawrence Bapst (argued), both of State Appellate Defender's Office, of Springfield, for appellant.

Scott Rueter, State's Attorney, of Decatur (Norbert J. Goetten, Robert J. Biderman, and Thomas R. Dodegge (argued), all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE COOK delivered the opinion of the court:

Defendant, Charles W. Davis, argues that the trial court erred by not dismissing the case against him pursuant to section 3—8—9 of the Unified Code of Corrections, hereinafter called the Interstate Agreement on Detainers (IAD) (730 ILCS 5/3—8—9 (West 2002)) when he was returned to federal custody prior to his trial in Illinois. We affirm.

On September 28, 1999, the Macon County State's Attorney lodged a detainer against defendant, who was serving a sentence for a federal conviction at the United States Penitentiary at Terre Haute, Indiana. Defendant requested the disposition of the charges against him, and on January 1, 2000, defendant was transferred to the custody of the Macon County sheriff. On February 1, 2000, the trial court arraigned defendant. On February 8, the court appointed counsel for defendant. The case was continued several times while defendant tried to secure expert testimony.

In June 2000, before defendant was tried on the pending Illinois charges, Macon County officials transferred defendant back to federal custody. On November 14, 2000, defendant filed a motion to dismiss the charges against him with prejudice, arguing that the State violated the IAD by returning him to federal custody prior to his trial. Defendant argued that Macon County improperly returned him to

federal custody before his trial because he was a difficult prisoner and because the county jails were overcrowded. The State argued that it was acceptable to return defendant to federal custody prior to his trial because defendant was the cause of the lengthy delay in his trial and the county jail is not properly set up to provide the types of rehabilitative programs available in the federal prison, making the return mutually beneficial. After hearing arguments, the trial court denied defendant's motion to dismiss. Defendant filed a motion to reconsider, citing a United States Supreme Court opinion that he argued overruled the Illinois authority that the trial court had relied upon. The court denied defendant's motion to reconsider.

On January 27, 2003, defendant was convicted of aggravated criminal sexual assault following a stipulated bench trial. Following the trial, he filed a posttrial motion reasserting the claims made in his motions to dismiss and reconsider. The trial court denied defendant's motion. This appeal followed.

■ On appeal, the sole issue is whether the trial court erred in not dismissing the case against defendant pursuant to the IAD when he was returned to federal custody prior to a trial on the Illinois charges. "The [IAD] is a compact entered into by 48 [s]tates, the United States, and the District of Columbia to establish procedures for resolution of one [s]tate's outstanding charges against a prisoner of another [s]tate." *New York v. Hill*, 528 U.S. 110, 111, 145 L. Ed. 2d 560, 564, 120 S. Ct. 659, 662 (2000). A state seeking to bring charges against a prisoner in another state's custody begins the process by filing a detainer, which is a request by the state that the institution in which the prisoner is housed hold the prisoner for the requesting state or notify the state when the prisoner's release is imminent. *Hill*, 528 U.S. at 112, 145 L. Ed. 2d at 565, 120 S. Ct. at 662. After a detainer has been lodged against him, a prisoner may file a request for final disposition of all charges against him. *Hill*, 528 U.S. at 112, 145 L. Ed. 2d at 565, 120 S. Ct. at 662. Upon such a request by a prisoner, the state must bring the prisoner to trial within 180 days. *Hill*, 528 U.S. at 112, 145 L. Ed. 2d at 565, 120 S. Ct. at 662-63. Article III of the IAD also provides in relevant part:

"If trial is not had on any indictment, information[,] or complaint contemplated hereby prior to the return of the prisoner to the original place of imprisonment, such indictment, information[,] or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." 730 ILCS 5/3—8—9(a)(art. III)(d) (West 2002).

Defendant contends that the "antishuttling" language in article III of the IAD is mandatory and requires dismissal when, like here, a

defendant is returned to the place of his previous incarceration prior to trial in the jurisdiction that had lodged a detainer against him. While defendant is generally correct about the mandatory nature of the language of the antishuttling provision, courts have recognized some exceptions to the rule.

In *Alabama v. Bozeman*, 533 U.S. 146, 150 L. Ed. 2d 188, 121 S. Ct. 2079 (2001), the United States Supreme Court examined an identical antishuttling provision found in article IV of the IAD, which differs from article III in that it provides for resolution of the charges at the state's request, rather than the defendant's. In *Bozeman*, Alabama prosecutors lodged a detainer against a defendant who was serving a sentence in a federal prison. *Bozeman*, 533 U.S. at 151, 150 L. Ed. 2d at 194, 121 S. Ct. at 2083. The defendant was transferred to Alabama custody for a single day, arraigned, and then returned to federal custody to await trial. *Bozeman*, 533 U.S. at 151, 150 L. Ed. 2d at 194, 121 S. Ct. at 2083-84. Although Alabama argued that any violation of the IAD was *de minimis* or harmless, the Court held that the antishuttling language in the IAD was mandatory and required a literal interpretation, such that even a *"de minimis"* violation of the antishuttling provision required dismissal of the case by the receiving state. *Bozeman*, 533 U.S. at 153-54, 150 L. Ed. 2d at 195-96, 121 S. Ct. at 2084-85. However, the Court in *Bozeman* also recognized that a defendant's rights under the IAD were not absolute and that a defendant could waive his rights under the IAD. *Bozeman*, 533 U.S. at 152-53, 150 L. Ed. 2d at 195, 121 S. Ct. at 2084, citing *Hill*, 528 U.S. at 114-15, 145 L. Ed. 2d at 566-67, 120 S. Ct. at 663-64. Although it held the antishuttling provision must be literally interpreted, the Court explicitly stated that its decision did not bar returning a prisoner who had waived his rights under the IAD. *Bozeman*, 533 U.S. at 156-57, 150 L. Ed. 2d at 197, 121 S. Ct. at 2086.

One of the rights a defendant can waive under the IAD is his right to a trial within 180 days of filing notice to have a final disposition of the charges against him. *Hill*, 528 U.S. at 114, 145 L. Ed. 2d at 567, 120 S. Ct. at 664. The Supreme Court recognized that the language of the IAD provides for "good-cause continuances" and held that when those continuances push a trial beyond the time limits of the IAD, defendant has waived those limits. *Hill*, 528 U.S. at 115, 145 L. Ed. 2d at 567, 120 S. Ct. at 664.

The Supreme Court of Illinois has considered the waiver of the time limits with respect to the antishuttling provisions in the IAD. In *Neville v. Friedman*, 67 Ill. 2d 488, 495, 367 N.E.2d 1341, 1344 (1977), the court held that the state's return of a defendant to federal prison prior to his trial in state court is acceptable under the IAD when the

defendant's own continuances have caused the delay in the trial. The court noted the basic purpose of the act, reducing obstructions to programs of prisoner treatment and rehabilitation, was inconsistent with keeping a defendant already receiving treatment in federal prison in a county jail designed for short-term incarceration for an indefinite period of time. *Neville*, 67 Ill. 2d at 493-94, 367 N.E.2d at 1343-44. The court stated that the return of the defendant to the federal prison when there has been a lengthy delay in the trial occasioned by the defendant's own continuances implemented the underlying rehabilitative purpose of the IAD and the case should not be dismissed pursuant to the antishuttling provision. *Neville*, 67 Ill. 2d at 495, 367 N.E.2d at 1344.

Although defendant insists that *Bozeman*'s reliance upon the literal language of the IAD overruled *Neville*, we disagree. The language at the end of the *Bozeman* opinion, "our decision does not bar a receiving [s]tate from returning a prisoner when it would be mutually advantageous and the prisoner accordingly waives his rights," refers precisely to the situation found in *Neville*. *Bozeman*, 533 U.S. at 156-57, 150 L. Ed. 2d at 197, 121 S. Ct. at 2086. In *Neville*, the court found that the defendant had waived his rights by delaying the trial through continuances and that it was mutually advantageous to return the prisoner to federal custody. *Neville*, 67 Ill. 2d at 493-94, 367 N.E.2d at 1343-44. *Neville* is still good law, and the trial court properly relied upon it in refusing to dismiss defendant's case.

■ Here, like in *Neville*, defendant waived his rights under the IAD. Defendant filed numerous continuances that caused a lengthy delay in his trial, well beyond the 180-day limit prescribed by the IAD. Further, although defendant contends that he had no desire to leave the Macon County jail and return to the federal prison, he submitted numerous complaints alleging that he was not receiving adequate services at the Macon County jail and that his rights had been violated. As stated in *Neville*, most county jails are only for the short-term incarceration of prisoners and are neither equipped nor staffed for the type of rehabilitative and training programs found in prisons. *Neville*, 67 Ill. 2d at 493-94, 367 N.E.2d at 1343-44. Defendant's continuances, his complaints about the availability of services, the overcrowding at the Macon County jail, and the availability of rehabilitative programs at the federal prison all support a finding that defendant had waived his rights under the IAD and that it was mutually beneficial for the State to return defendant to federal custody prior to the resolution of charges against him.

Finally, defendant argues that because he was kept out of rehabilitative programs upon his return to federal prison, his return

was not mutually advantageous, but purely for the benefit of the State. However, the trial court heard these arguments and rejected them. The State has no control over what actions the federal prison takes upon a defendant's return. Defendant has made no showing that the trial court erred in its judgment. Accordingly, we affirm the trial court's judgment.

Affirmed.

MYERSCOUGH and KNECHT, JJ., concur.