NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2022 IL App (4th) 210479-U

NO. 4-21-0479

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 3, 2022
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
|     Plaintiff-Appellee, | ) | Circuit Court of |
|     v. | ) | Douglas County |
| ANTONIO SUSTAITA, | ) | No. 10CF14 |
|     Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Gary Webber, |
| | ) | Judge Presiding. |

PRESIDING JUSTICE KNECHT delivered the judgment of the court.
Justices Turner and Zenoff concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant failed to make a substantial showing of counsel's ineffectiveness after alleged failures by the Texas Department of Civil Justice and counsel caused defendant not to seek an earlier resolution of the Illinois charges against him, resulting in his spending more time in a Texas prison for his Texas offense rather than earning time-served credit against that sentence while also earning presentence credit in Illinois.

¶ 2    Defendant, Antonio Sustaita, appeals the second-stage dismissal of his amended postconviction petition. Defendant argues his petition and supporting documentation made a substantial showing he was denied the effective assistance of counsel when trial counsel (1) failed to raise before the trial court the failure of the Texas Department of Civil Justice (TDCJ) to provide prompt notice pursuant to the Interstate Agreement on Detainers (IAD) (730 ILCS 5/3-8-9, art. III(c) (West 2010)) of his right to request a speedy resolution of the Illinois

charges against him and (2) failed to advise defendant he could receive credit for time served against both his Texas sentence and his Illinois sentence if defendant elected to proceed on the Illinois charges.

¶ 3        We affirm.

¶ 4                                I. BACKGROUND

¶ 5        After a traffic stop on February 4, 2010, defendant was charged with one count of unlawful cannabis trafficking (720 ILCS 550/5.1(a) (West 2010) (2500 grams or more)), unlawful possession with intent to deliver cannabis (720 ILCS 550/5(g) (West 2010) (more than 5000 grams)), and unlawful possession of cannabis (720 ILCS 550/4(g) (West 2010) (more than 5000 grams)). In February 2011, Harvey Welch entered an appearance on defendant's behalf. After that appearance, Welch served as defendant's trial counsel on the above charges.

¶ 6        While out on bond for the above offenses, in June 2011, defendant was arrested in Texas for driving while intoxicated (DWI). According to defendant's affidavit attached to his amended postconviction petition, defendant informed Welch he had a Texas court date and he asked Welch to request a continuance for his Illinois case. Welch refused to do so and advised defendant a warrant for his arrest would probably be issued. While incarcerated in Texas, defendant did not appear for a July hearing on his Illinois charges. An arrest warrant was issued. On July 11 and 27, 2011, Welch advised defendant of the arrest warrant by letter sent to defendant's Indiana address.

¶ 7        On August 8, 2011, defendant pleaded guilty to the Texas charge and received a two-year prison sentence. At some point that same month, the Douglas County state's attorney learned defendant was incarcerated in Texas. A docket entry dated August 15, 2011, indicates Welch represented to the trial court defendant "may be incarcerated" in Texas and the parties

wished to have additional time to acquire defendant's address.

¶ 8    According to defendant's affidavit, defendant again contacted Welch to inform him of his prison sentence in Texas. Defendant asked Welch to have him extradited to Illinois for the resolution of the Illinois case. Welch refused defendant's request, telling defendant he "would have to do that on [his] own." Defendant averred he had no communication with Welch until April 4, 2012.

¶ 9    On September 13, 2011, defendant filed a petition contesting Texas's hold on him. The next day, the "authority" informed defendant "Illinois will probably pick you up once you are done with [TDJC]."

¶ 10    On October 21, 2011, Welch sent an email to the Douglas County state's attorney, inquiring into defendant's status "regarding incarceration in Texas." The state's attorney responded by providing defendant's address at the Garza West Correctional Center. The state's attorney further indicated defendant was eligible for parole in Texas after October 21, 2011, but the projected release date was July 28, 2013. The state's attorney opined, given overcrowding and defendant's offense, it was "extremely unlikely that he will do the entire 2 years." The state's attorney observed, "He has our Warrant hold, so hopefully he will not go skipping back across the Rio Grande before we have a chance at him."

¶ 11    The Sheriff's Office of Douglas County was notified by Joni White of the TDCJ by letter dated January 31, 2012, that "[n]otifications have been made on our records" that defendant "will be wanted by your agency upon release from this institution." The TDCJ further indicated the Sheriff's Office would be "notified prior to release of this offender so that you may have an officer here to take him/her into custody."

¶ 12    On February 12, 2012, White informed defendant of the Douglas County detainer

against him. White also provided notice defendant had a right to request final disposition of the Illinois charges and, if defendant desired to make the request, he should notify White.

¶ 13 On April 2, 2012, the Douglas County clerk of the circuit court received a letter from defendant. In the letter, defendant asked for transcripts, stating his request was due to the detainer on his name by Douglas County.

¶ 14 By letter dated April 4, 2012, Welch wrote defendant stating his office had been attempting for some time to get into contact with him. Welch further stated, "Now that we know your status as to where you are, we can try and get your Douglas County case resolved."

¶ 15 According to defendant's postconviction affidavit, a Texas correctional officer, on April 12, 2012, delivered a form entitled "Offender's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations or Complaints" to defendant's cell and told defendant to sign it. Defendant signed it that day.

¶ 16 On May 14, 2012, the Douglas County sheriff received defendant's IAD demand from White. The letter from White was dated April 27, 2012.

¶ 17 On May 31, 2012, the Douglas County state's attorney sent IAD forms requesting temporary custody of defendant for a hearing in Illinois.

¶ 18 An Illinois jury, in January 2013, found defendant guilty of charges against him. Defendant was sentenced to 24 years' imprisonment and awarded presentence credit for several time periods, the last of which began on July 3, 2012.

¶ 19 On July 3, 2012, defendant was in Douglas County custody. Upon being sentenced, defendant received pretrial sentencing credit for several periods, the last beginning on July 3, 2012. No credit was given for time between February 5, 2011, and July 3, 2012.

¶ 20 After his conviction, defendant filed multiple collateral pleadings, including an

April 2016 *pro se* petition for postconviction relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). In June 2020, an amended petition for postconviction relief was filed by defendant's counsel.

¶ 21       According to the amended petition and the accompanying documentation, the TDCJ violated the terms of the IAD by failing to notify him promptly of his right to a speedy trial. Defendant emphasized the email of October 21, 2011, demonstrates a detainer warrant had already been issued as of that date but defendant was not provided notice of the warrant and his rights under the IAD until February 12, 2012. This, according to defendant, was a violation of his due-process rights. In addition, defendant contended he was denied the effective assistance of counsel in that Welch did not notify defendant of his rights under the IAD and he was thereby prejudiced as "[h]ad [he] achieved an earlier resolution of his Illinois cases his time in the IDOC would at the very least been significantly reduced."

¶ 22       Regarding his claims of ineffective assistances of counsel, defendant alleged "[t]rial counsel failed to communicate with [defendant] during the period of time [defendant] was held by TDCJ." Defendant asserts trial counsel was plainly aware he was in custody in Texas as early as August 15, 2011. According to defendant, "[t]his failure to advise [him] of his rights to speedy trial pursuant to the IAD deprived [him] of vital information needed to make informed decisions concerning his case." Defendant asserted had counsel informed him of his rights under IAD, he "could have received presentence credit on his Illinois sentence while continuing to earn credit on his Texas sentence." Defendant argued was prejudiced by counsel's conduct because had he achieved "an earlier resolution of his Illinois cases[,] his time in the IDOC would at the very least been significantly reduced."

¶ 23       The State moved to dismiss the petition. The State argued the defendant's IAD

claim was barred by *res judicata* as it could have been raised on direct appeal, the Douglas County prosecutor complied with the IAD statute, the State could not be responsible for Texas's errors, and dismissal is not an appropriate remedy for an IAD notice failure. The State maintained defendant failed to prove counsel's performance was deficient and he was prejudiced by the defense.

¶ 24 The circuit court agreed the State of Texas had a duty to notify defendant promptly of his rights under IAD but failed to do so. The court found counsel did not have the same duty under the IAD. The court believed the matter could have been brought on direct appeal and defendant had not shown his counsel was ineffective. The court found the issue did not "affect his ability to have a fair trial *** in light of the fact that he did not want a speedy trial when he was back here and the [S]tate indicated they [were] ready to go and the defendant wanted the continuance and was granted that." The court concluded it did "not believe that anyone other than the State of Texas failed to give prompt notice." The court found that failure was not "something that would demand for a dismissal." The court further concluded the matter could have been brought on direct appeal

¶ 25 This appeal followed.

¶ 26 II. ANALYSIS

¶ 27 A. Proceedings Under the Act

¶ 28 Under the Act, a three-stage process provides prisoners the opportunity to assert constitutional challenges to their convictions or sentences. *People v. Hunt*, 2022 IL App (4th) 210001, ¶ 19. At the first stage of proceedings, a defendant files a petition in the circuit court. *People v. Andrews*, 403 Ill. App. 3d 654, 658-59, 936 N.E.2d 648, 653 (2010). The court then examines the petition to decide whether its claims are frivolous or patently without merit. *Id.* If

the court finds the petition's claims to be frivolous or patently without merit, it shall dismiss the petition. 725 ILCS 5/122-2.1(a)(2) (West 2016).

¶ 29        If a petition survives the first-stage review, it will advance to the second stage (725 ILCS 5/122-2.1(a) (West 2016)), during which counsel may be appointed and an amended petition may be filed. *Hunt*, 2022 IL App (4th) 210001, ¶ 19. When an amended petition is filed, the State may answer the petition or move to dismiss it. 725 ILCS 5/122-5 (West 2016). If the State files an answer or the circuit court denies the State's motion to dismiss, the postconviction proceeding advances to the third stage, at which an evidentiary hearing may occur and the defendant may present evidence to support his claim. See 725 ILCS 5/122-6 (West 2016); see also *Andrews*, 403 Ill. App. 3d at 659.

¶ 30        This appeal involves a claim that was dismissed at the second stage of proceedings. At this stage, the circuit court's task is to decide whether the allegations of the petition and the documentation accompanying the petition demonstrate a substantial showing of a constitutional violation. *People v. Snow*, 2012 IL App (4th) 110415, ¶ 15, 964 N.E.2d 1139. The burden of making that showing falls on the defendant. *Id.* A petition may be dismissed at the second stage only when its allegations, "liberally construed in light of the trial record," do not make a substantial showing of a constitutional violation. *Id.* On appeal, we review a second-stage dismissal *de novo*. *Id.*

¶ 31                    B. Defendant's IAD-Based Claims

¶ 32        On appeal, defendant contends he made a substantial showing of a denial of his constitutional rights to the effective assistance of counsel due to counsel's failure to raise the issue of TDCJ's failure to comply with the prompt notice requirement of the IAD and counsel's failure to notify him of defendant's rights under the IAD. Defendant, however, no longer seeks

dismissal of his Illinois conviction based on these alleged constitutional deprivations but seeks additional presentence credit for time lost in Illinois due to those errors. Defendant contends Welch's failure to speak to him and advise him to demand resolution of his Illinois claims caused him to lose "several more months of sentence credit" against his Illinois conviction.

¶ 33 Ineffective-assistance-of-counsel claims are constitutional claims cognizable under the Act. See, *e.g.*, *People v. Jones*, 191 Ill. 2d 354, 359, 732 N.E.2d 573, 576 (2000). To succeed on an ineffectiveness claim, one must show (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's unprofessional errors, there is a reasonable probability the result of the proceeding would have been different. *People v. Domagala*, 2013 IL 113688, ¶ 36, 987 N.E.2d 767. It is not necessary for a court to consider whether counsel's performance was deficient before considering whether there is a reasonable probability the proceeding's outcome would have been different but for counsel's error. *Strickland v. Washington*, 466 U.S. 668, 697 (1984).

¶ 34 Defendant's postconviction claims of ineffectiveness are based on the IAD, which is a compact that sets forth procedures for the resolution of one state's charges against an individual incarcerated in another state. *People v. Davis*, 356 Ill. App. 3d 940, 942, 827 N.E.2d 518, 519 (2005). Forty-eight states, including Texas (Tex. Code Crim. Proc. Ann. art. 51.14 (West 2016)), have entered that contract. *Davis*, 356 Ill. App. 3d at 942. The IAD seeks to expedite charges pending in one state, the receiving state, against a person imprisoned in another state, the sending state. *United States v. Mauro*, 436 U.S. 340, 350-51 (1978); 730 ILCS 5/3-8-9, arts. I, II(b), (c) (West 2010).

¶ 35 The receiving state triggers the IAD by filing a detainer with the sending state. *Davis*, 356 Ill. App. 3d at 942; 730 ILCS 5/3-8-9, art. II(b), (c) (West 2010). A detainer "is a

request by the state that the institution in which the prisoner is housed hold the prisoner for the [receiving] state or notify the state when the prisoner's release is imminent." *Davis*, 356 Ill. App. 3d at 942. Once a detainer has been filed against a prisoner, "[t]he warden, commissioner of corrections or other official having custody of the prisoner shall promptly inform him" of that detainer and "of his right to make a request for final disposition of" the receiving state's charges. 730 ILCS 5/3-8-9, art. III(c) (West 2010). Section (a) of Article III of the IAD provides that a prisoner may file a demand for final disposition of all charges against him in the receiving state, which must occur within 180 days. *Davis*, 356 Ill. App. 3d at 942; see also 730 ILCS 5/3-8-9, art. III(a) (West 2010).

¶ 36                                    1. *Forfeiture*

¶ 37        The State initially argues defendant forfeited his claims as, before the trial court and in his postconviction petition, defendant did not seek as a remedy additional presentence credit for time served in Texas. The State argues, before the circuit court, defendant sought the dismissal of his conviction and sentence and did not ask for credit for time that would have been served in Illinois had Texas promptly notified him of the IAD or had his Illinois trial counsel done so. The State emphasizes defendant agrees he is not entitled to having his Illinois conviction vacated. The State argues defendant should be foreclosed from raising a new theory of relief on appeal.

¶ 38        Defendant counters he is asserting the same claim of constitutional errors on appeal, the absence of legally mandated notice under the IAD, but is only seeking lesser relief. Defendant acknowledges a claim for the reversal of his Illinois conviction would fail. See *People v. Adams*, 2012 IL App (5th) 100088, ¶ 15, 969 N.E.2d 553 (declining to dismiss Illinois charges based on Kentucky's failure to provide notice under the IAD).

¶ 39 Defendant has changed his claim of constitutional errors on appeal. In his amended petition, defendant asserted a violation of his right to due process by the TDCJ. On appeal, he challenges the same error but does so within a claim counsel was ineffective for not raising the matter before the trial court. The change is likely due to the circuit court's conclusion the matter could have been raised on direct appeal. Defendant is asserting the same constitutional deprivation regarding counsel's failure to advise him regarding the provisions of the IAC but is requesting a different remedy for that claim. At oral argument the State conceded defendant briefly raised the lesser remedy of sentence credit in his postconviction petition. We accept the concession.

¶ 40                                        2. *Ineffectiveness Claims*

¶ 41 Defendant first alleges he made a substantial showing he was denied the effective assistance of counsel when counsel failed to argue before the trial court that he was denied due process when TDCJ failed to provide him notice "of his right to make a request for final disposition of" the Illinois charges. 730 ILCS 5/3-8-9, art. III(c) (West 2010). Defendant asserts had trial counsel raised the issue of the untimely IAD notice, he could have obtained the remedy of credit toward his sentence and have been set for release from his Illinois sentence earlier.

¶ 42 We find, however, defendant has not made a substantial showing the outcome of the proceeding would have been different had trial counsel raised this issue before the trial court. Defendant has not shown the trial court had the authority to provide the relief he would have sought.

¶ 43 Fatal to defendant's claim is the mistaken assertion he has been denied time against his Illinois sentence: "Had [defendant] demanded trial sooner, he would [have] reached Illinois sooner. And had [he] reached Illinois sooner, he would have gained more Illinois pretrial

custody credit, thus advancing his out date." Defendant's argument presupposes that had he been sent sooner to Illinois he would have earned more pretrial custody credit. However, had defendant made the demand sooner, his trial similarly would have occurred sooner. The 180-day speedy trial demand continued to apply. While an out-date may have occurred sooner, the defendant has not shown he would have had to serve even one day longer for his Illinois crimes as a result of the alleged failures of the TDCJ and trial counsel.

¶ 44		What defendant lost was time served against his Texas sentence. According to the amended petition, defendant received a two-year sentence for his Texas DWI. He was serving that sentence when he made his request for a speedy trial on the Illinois charges and was sent to Illinois for trial. Under the IAD, when a prisoner makes a request under Article III, the "sending state shall offer to deliver temporary custody of such prisoner to the appropriate authority in the state where" the charges were pending "in order that speedy and efficient prosecution may be had." 730 ILCS 5/3-8-9, art. V(a) (West 2010). "During the continuance of temporary custody ***, time being served on the sentence shall continue to run." *Id.* § 3-8-9, art. V(f). Here, the defendant was in Douglas County custody as of July 3, 2012. He was given credit against his Illinois sentence as of that date. Under article V, section (f) of the IAD, defendant's time on his Texas sentence continued to run as he was gaining presentence credit toward his Illinois sentence. Had defendant gotten to Illinois sooner, his Illinois time would not have changed but his Texas sentence would have, as he could have been serving that sentence and receiving credit against that sentence while in Illinois also receiving credit against his future Illinois sentence.

¶ 45		Defendant has not shown the trial court had any authority to give credit for lost time served against the Texas sentence toward his Illinois sentence. Cases cited by the State, though not directly on point regarding a failure to give IAD notice, show Illinois courts have not

- 11 -

credited Illinois sentences for time served in other states when those defendants were serving sentences for offenses committed in those states. See *People v. Gardner*, 172 Ill. App. 3d 763, 768, 527 N.E.2d 155, 158 (1988) (finding defendants are "not entitled to credit for time spent in custody while incarcerated in another state as the result of a crime committed there, even if a detainer warrant is served on the defendant in that state"); see also *People v. Wills*, 251 Ill. App. 3d 640, 646-47, 622 N.E.2d 1271, 1276 (1993) (rejecting a claim for time served against an Illinois sentence after a detainer was served as the defendant "was not confined because of the charges pending against him in Illinois" but for his federal crimes); *People v. Harvey*, 213 Ill. App. 3d 83, 89-90, 571 N.E.2d 1185, 1189-90 (1991) (rejecting the Illinois defendant's claim for time served credit as "[h]e was not confined by Missouri and Federal authorities simply because Illinois charges were pending against him"). In another Illinois decision, the court refused to give credit for time spent in custody in a sending state even when the Illinois detainer directly affected the sending state's prisoner's opportunity for work release. See *People v. Tucker*, 138 Ill. App. 3d 503, 506, 485 N.E.2d 1290, 1292 (1985) (drawing a distinction between the situation where a detainer kept an individual in custody longer than he could be held under the charge in the sending state and the detainer that "merely prompts the sending state to deny discretionary privileges to the prisoner").

¶ 46        Defendant cites only one case in support of his contention that an appropriate remedy is to give credit against his Illinois sentence to remedy the time lost on the Texas sentence, *People v. Johnson*, 819 P.2d 1114 (Colo. App. 1991). The *Johnson* court, however, did not find the remedy proposed here proper. It simply held the defendant could not acquire a dismissal for the lack of IAD notice because defendant had received sufficient sentencing credit and could not prove prejudice. *Id.* at 1116. Specifically, in *Johnson*, while burglary charges were

pending against the defendant in Colorado, the defendant was imprisoned in California. *Id.* at 1114-15. Colorado authorities lodged a detainer against the defendant. *Id.* at 1115. The record shows California received the detainer in November 1988 but failed to inform the defendant of his right to request final disposition under the IAD. *Id.* At the time the *Johnson* case was decided, Colorado permitted a dismissal of charges as a sanction for the failure to comply with IAD's notice requirements unless the State could show no prejudice occurred. *Sweaney v. District Court*, 713 P.2d 914, 918 (Colo. 1986). The *Johnson* court rejected the defendant's request to dismiss his Colorado charges as a sanction for the violation of the prompt notification requirement of the IAD. *Johnson*, 819 P.2d at 1115. The defendant's claim of prejudice, like defendant's claim here, was he "was prejudiced only by being deprived of the possible benefit of concurrent sentences on the California conviction and the untried Colorado information." *Id.* at 1116. The court ultimately found no prejudice as the trial court gave the *Johnson* defendant sentencing credit for the time spent in the California from the date the detainer had been lodged. *Id.* This placed the defendant "in a position at least as favorable as might have been achieved if prompt notification had been given in California." *Id. Johnson* contains no analysis and no determination of the propriety of such a remedy. It thus provides no legal authority under the IAD or under other statutes or case law for this court to do so here.

¶ 47     Defendant has thus not provided any legal basis on which the trial court could have ordered time lost on the Texas sentence against the Illinois sentence and, therefore, has not made a substantial showing a reasonable probability exists the outcome of the proceeding would have been different had counsel raised the issue of the TDCJ's failure to give defendant prompt notice.

¶ 48     Defendant's second claim for ineffective assistance of counsel is based on his

Illinois trial counsel's failure to advise him to invoke the IAD soon after Douglas County lodged its detainer. Defendant contends, had counsel done so, he would have made the IAD request promptly and gained several more months of sentence credit against his Illinois sentence as "more Illinois credit was in his interest."

¶ 49　　　　We find defendant has not made a substantial showing counsel was ineffective, as defendant has not shown counsel's representation fell below an objective standard of reasonableness for not advising him the effect an IAD request would have on defendant's Texas sentence. Defendant has cited case law showing counsel's failure to advise for the offense which counsel provided the representation when that failure resulted in lost time served credit on that same offense was ineffective. See, *e.g.*, *People v. Nesbit*, 2016 IL App (3d) 140591, ¶ 47, 64 N.E.3d 682. But, as we observed above, defendant has not established he lost any time against his Illinois sentence that should have been given to him. Instead, defendant lost time against his Texas sentence. Defendant has cited no case law and developed no argument that it was unreasonable for counsel to not advise defendant of the collateral effects on his Texas sentence from proceedings in which counsel did not represent defendant.

¶ 50　　　　Defendant has, therefore, not met his burden of making a substantial showing of a deprivation of his constitutional rights. His postconviction petition was properly dismissed.

¶ 51　　　　　　　　　　　　III. CONCLUSION

¶ 52　　　　We affirm the trial court's judgment.

¶ 53　　　　Affirmed.