**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210167-U

Order filed May 1, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | Appeal Nos. 3-21-0167 and 3-21-0311 |
| v. | ) ) | Circuit No. 20-CF-391 |
| ABRAHAM J. YBARRA, | ) ) ) | Honorable Kathy S. Bradshaw-Elliott, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE PETERSON delivered the judgment of the court.
Justices McDade and Hettel concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  The court did not commit plain error by failing to exclude a statement as evidence of other bad acts. The court did not err by dismissing defendant's postconviction petition at the first stage.

¶ 2     Defendant, Abraham J. Ybarra, appeals his convictions and the Kankakee County circuit court's order dismissing his postconviction petition. Defendant argues that the court committed plain error by allowing the victim, Jessica Bacskai, to testify to a statement made by her and defendant's son, X.B., because the statement constituted evidence of an uncharged and

unsubstantiated act of attempted murder. He further argues that the court erred by dismissing his postconviction petition where his due process rights were violated because the charging instrument was insufficient. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4         The State charged defendant, by way of an information, with two counts of aggravated domestic battery (720 ILCS 5/23-3.3(a-5) (West 2020)) and one count of domestic battery (*id.* § 12-3.2(a)(1)). Both counts of aggravated battery alleged that on July 2, 2020, defendant:

> "committed the offense of **AGGRAVATED DOMESTIC BATTERY**, in violation of Chapter 720, Paragraph 5/12-3.3(a-5) of the Illinois Compiled Statutes, in that said defendant, in committing a domestic battery, in violation of the Illinois Compiled Statutes, Chapter 720, Paragraph 5/12-3.2(a)(1), without legal justification, knowingly strangled *** Bacskai, a family or household member."

The matter proceeded to a jury trial.

¶ 5         During opening statement, the State told the jury it would hear from Bacskai that "each time [defendant] put his hands around her neck or on her face, she couldn't breathe." It further told the jury that "each time [defendant] put his hands around [Bacskai's] neck, *** and then put his hands over her mouth, so she couldn't breathe, those two times he was strangling her." Defense counsel, during his opening statement, told the jury that defendant was not contesting that he struck Bacskai and that the crux of the trial was whether the State could prove the allegations of strangulation. He read the definition of strangulation to the jury, which he stated was "intentionally impeding the normal breathing or circulation of blood of an individual by applying pressure on the throat or neck of that individual or by blocking the nose or mouth of

2

that individual." Defense counsel then told the jury it would see pictures of bruises on Bacskai but it would not see any bruise or injury to her neck and suggested that was because she was not strangled.

¶ 6    Bacskai testified that she and defendant have two children together, including X.B. On the evening of July 1, 2020, defendant came to her house and asked for money, which she gave him. Defendant left but came back later that evening "around midnight." Defendant wanted more money and "ransacked the house." Bacskai stated that defendant "choke hold me kind of." She had difficulty breathing at that time. Defendant left again but came back early in the morning on July 2, 2020. Defendant punched Bacskai in the jaw. Defendant left the room and she attempted to put X.B. out of a window so he could go to a neighbor's house but defendant returned and pulled him back inside. Bacskai stated that defendant "told me we are not going to do that again and got me on the bed. Choked me. [X.B] was screaming, Don't kill my mom." Defense counsel objected on the basis of hearsay. The transcript does not show a ruling on the objection. The State then asked what Bacskai meant by "choke" and she responded that defendant's hands were around her neck. She was not able to breathe. X.B. was yelling and "at that point [defendant] put *** one hand over [Bacskai's] nose and *** mouth and shoved [her] face into the bed." Bacskai stopped fighting and defendant "let up." She was able to leave. Bacskai went to a neighbor's house and called 911. The 911 recording was admitted into evidence and played in court. Photographs taken of Bacskai and her home were also admitted into evidence and shown to the jury. One photograph showed blood on a bathroom door and Bacskai testified that she believed it was from her nose from when defendant was holding her mouth and nose. Other photographs showed her blood on a bed. Bacskai reiterated that defendant choked her the second time he came over and then again when he came over in the morning. She described the second choking

incident as defendant "was choking me around my neck, and then let up and put his hands on my nose and my mouth and shoved my head into the bed." During all of those instances she had difficulty breathing.

¶ 7        On cross-examination, Bacskai indicated that defendant choked her for a few seconds. She admitted that in her written statement she indicated it was 30-45 seconds. Bacskai admitted that she previously used heroin but stated she had not used any drugs or alcohol around the time defendant attacked her. Bacskai further admitted that during the 911 call she stated that defendant held her hostage all night because that is how she felt at the time but at the time of trial she would not say that. Defense counsel questioned Bacskai about when defendant held her mouth and nose. Bacskai agreed that she did not put anything about defendant covering her mouth or nose in her written statement but stated that the choking was more on her mind. The photographs of Bacskai were taken as soon as the police arrived—approximately five minutes after she went to her neighbors.

¶ 8        X.B. testified that he was five years old. He saw an argument between Bacskai and defendant. He stated that defendant "was choking [Bacskai] and putting her face against her--" and at that point the State asked additional questions. X.B. stated that defendant touched Bacskai on her face and the record indicates that X.B. put his palm against his face. He further stated that defendant touched Bacskai on her neck and the record reflects that X.B. used his palm to grasp around his neck. Defendant and Bacskai were yelling at each other. X.B., his sister, and Bacskai were able to get out of the house. Defendant told Bacskai, "Next time I see you, I'm going to kill you." On cross-examination, defense counsel questioned X.B. regarding his statement that defendant put his hand on Bacskai's face.

¶ 9        Defense counsel asked an officer if Bacskai ever suggested that defendant covered her mouth or nose and he testified that he did not recall that. After the State's witnesses, the proceedings ended for the day. The next day, prior to trial resuming, the State indicated it would not proceed on one of the counts of aggravated domestic battery. When trial resumed, the State rested and then the defense rested. During closing argument, the State noted that defendant choked Bacskai, grabbed her by her neck, and covered her mouth and nose. The defense highlighted that there was no bruising to Bacskai's neck and argued that this indicated that she was not choked or strangled.

¶ 10        The jury found defendant guilty on the remaining count of aggravated domestic battery and domestic battery. Defense counsel filed a motion for judgment notwithstanding the verdict arguing the State failed to prove defendant guilty beyond a reasonable doubt. He also filed a motion for new trial arguing the court erred by allowing X.B. to testify because he was not competent. Defendant filed a *pro se* document alleging ineffective assistance of trial counsel. He alleged, in part, that defense counsel failed to file a motion for a bill of particulars. Defendant indicated this was in relation to an issue of the State alleging that he choked Bacskai but the State put evidence on at trial that he covered her nose and mouth as well. Defendant also alleged counsel failed to object to discovery violations.

¶ 11        During a hearing on defendant's ineffective assistance claims, with regard to discovery violations, defendant elaborated that from the discovery he was tendered, the only thing he was being accused of as far as strangulation was manual strangulation around Bacskai's neck but then in opening statements, the State alleged that he gave Bacskai a bloody nose and covered her mouth. Defendant argued that he did not know he was being accused of that and that the State should have given him that information so he could prepare a defense. The discussion between

5

defendant and the court then focused on blood that was on a sheet and that defendant was aware of the blood on the sheet. The court noted defendant was aware of the blood and the State argued in opening that the blood was from when defendant covered Bacskai's nose. Defendant argued that the blood was his. Trial counsel interjected that the blood was not particularly relevant to whether Bacskai was strangled because she was saying defendant choked her and the blood was irrelevant to whether Bacskai was strangled. Trial counsel noted that there were no visible marks on Bacskai's neck. Defendant reiterated that nothing in the pretrial discovery accused him of covering Bacskai's mouth and it only alleged that he put his hands around her neck. He stated that he had an agreement with counsel of what they were going to do. They would not contest striking Bacskai but they "were ready for a defense against [defendant] getting accused of strangling [Bacskai] two times from her neck" but not regarding covering her mouth. Trial counsel responded that defendant was right about the discovery only indicating that he put his hands around Bacskai's neck but that he did question Bacskai about the inconsistencies and argued them in closing. The court found that counsel was not negligent in this regard.

¶ 12        Defendant also argued that counsel should have filed a bill of particulars because the information only indicated that he strangled Bacskai but there are different methods of strangulation and he did not know which method he was being accused of. Trial counsel stated that presumably the State talked to Bacskai prior to trial and that is where they obtained the information regarding defendant covering Bacskai's mouth. The court found that counsel was not negligent in this regard.

¶ 13        After a hearing, the court denied the posttrial motions. The convictions merged and the court sentenced defendant to 12 years' imprisonment for aggravated domestic battery. Defendant filed a motion for reconsideration and the court denied it. Defendant appealed.

¶ 14        While his direct appeal was pending, defendant filed a postconviction petition. He argued that his charging instrument was insufficient because it failed to set forth the nature of the offense with sufficient specificity. Defendant argued that the statute under which he was charged was ambiguous and set forth distinct, disparate, and alternative acts because it defined strangle as impeding normal breathing by applying pressure on the throat or neck or by blocking the nose or mouth. Defendant further alleged that prior to trial he was only provided discovery that indicated he committed strangulation by putting his hands around Bacskai's neck but during opening argument, the State, for the first time, indicated he blocked Bacskai's nose or mouth. He argues that this variance "misled" him in making his defense. Defendant stated that because of the insufficient charging instrument he was "prejudiced and misled in setting up an effective defense" and that had the "charging instrument not prejudiced [him] and misled [him] there is a reasonable probability the outcome at trial would of been different." The court dismissed the postconviction petition at the first stage. Defendant filed a motion to reconsider, which the court denied. Defendant appealed. This court granted defendant's unopposed motion to consolidate defendant's direct appeal and appeal from the dismissal of his postconviction petition.

¶ 15                                                    II. ANALYSIS

¶ 16                                                    A. X.B.'s Statement

¶ 17        Defendant argues that the court improperly admitted X.B.'s statement—"Don't kill my mom"—during Bacskai's testimony because the statement was overly prejudicial evidence of other crimes or bad acts. The State argues that the statement was not evidence of other crimes or bad acts.

¶ 18        Initially, we note that the State argues that this issue was forfeited. We agree. To preserve an error for appellate review, a defendant must object to the error at trial and raise it in his

7

posttrial motion. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Here, during trial, defendant only objected to the statement on the basis of hearsay, not that it was evidence of other bad acts. Moreover, defendant failed to include any allegation of error regarding the statement in his posttrial motion. Defendant argues that if the issue was forfeited it can be reviewed under the plain error doctrine. The first step in applying the plain error doctrine is to determine if an error occurred. *People v. Piatkowski*, 225 Ill. 2d 551, 565 (2007).

¶ 19    First, it is unclear whether defendant is arguing that the statement should have been excluded as hearsay. We note that it is not clear that the statement would be considered hearsay as it does not appear it would have been admitted for the truth of the matter asserted. See Ill. R. Evid. 801(c) (eff. Oct. 15, 2015) (defining hearsay). Regardless, as defendant appears to recognize, it would fall under the excited utterance exception to the general rule barring hearsay. See Ill. R. Evid. 802 (eff. Jan. 1, 2011) (providing that hearsay is not admissible except as otherwise provided); Ill. R. Evid. 803(2) (eff. Sept. 28, 2018) (providing that a statement is not excluded by the hearsay rule if it is "relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.").

¶ 20    Next, although defendant is correct that evidence of other crimes or other bad acts may be inadmissible (see *e.g.*, Ill. R. Evid. 404(b) (eff. Jan. 1, 2011)), X.B.'s statement is not evidence of other crimes or bad acts. X.B. was requesting that defendant not kill Bacskai rather than stating that defendant was killing or trying to kill Bacskai. Additionally, X.B.'s statement was directly related to the crime at issue, instead of some other bad act or crime. Specifically, X.B. made the statement in response to witnessing defendant's strangulation of Bacskai, which is relevant to whether defendant was in fact strangling Bacskai. Thus, the statement would be circumstantial

8

evidence of the crime at issue, not some uncharged act. Thus, the court did not err by admitting evidence of other crimes or bad acts because X.B.'s statement was not such evidence.

¶ 21                                    B. Postconviction Petition

¶ 22        Defendant argues that the court erred by dismissing his postconviction petition at the first stage because he stated a meritorious claim that his charging instrument was insufficient. He argues that it was insufficient because of the disjunctives used in the definition of strangulation and the State's failure to specify in the charging instrument the method of strangulation. Defendant argues he was prejudiced by the insufficiency because "the only reason he agreed with defense counsel's strategy not to contest the misdemeanor charge of domestic battery was for the purpose of contesting the charge of strangulation by applying pressure to [Bacskai]'s neck." Defendant further argues that he did not know how to proceed with his defense after learning about the allegation that he covered Bacskai's nose and mouth and that he had prepared for a case of strangulation by pressure to the neck. The State argues that the complaint was not deficient because it sufficiently apprised defendant of the nature of the charges against him. The State further argues defendant was not prejudiced by the complaint because the alleged lack of specificity did not prevent him from preparing a defense.

¶ 23        The Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)) provides a process for a criminal defendant to assert that his conviction resulted from a substantial denial of his rights under the United States Constitution, the Illinois Constitution, or both. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). At the first stage, defendant need only state the "gist" of a constitutional claim. *Id.* The circuit court may summarily dismiss the petition at the first stage of proceedings if it is frivolous or patently without merit, such that it "has no arguable basis either in law or in fact." *Id.* at 16.

¶ 24    A defendant has a right to be informed of the nature and cause of criminal accusations against him. *People v. DiLorenzo*, 169 Ill. 2d 318, 321 (1996). "The 'nature and cause' of a criminal accusation refers to the crime committed, not the manner in which it was committed." *Id.* When a charging instrument is challenged pretrial, the court must determine whether it strictly complies with section 111-3 of the Code of Criminal Procedure of 1963 (725 ILCS 5/111-3 (West 2020)). *DiLorenzo*, 169 Ill. 2d at 321-22. Section 111-3 requires that the charge be in writing and state the name of the offense, cite the statute allegedly violated, set forth the nature and elements of the offense, state the date and county of the offense, and state the name of the accused. 725 ILCS 5/111-3(a) (West 2020). However, when the sufficiency of a charging instrument is attacked posttrial "it is sufficient that the indictment apprised the accused of the precise offense charged with enough specificity to (1) allow preparation of his defense and (2) allow pleading a resulting conviction as a bar to future prosecution arising out of the same conduct." *DiLorenzo*, 169 Ill. 2d at 322.

¶ 25    Defendant only challenges whether the information sufficiently set forth the nature and elements of the offense charged and only with respect to the failure to designate the manner of strangulation. Due to the timing of defendant's challenge to the sufficiency of the information, it need not be shown that it strictly complied with section 111-3. However, our review indicates that the information complied with section 111-3. As stated in *DiLorenzo*, the nature of the accusation refers to the crime itself, rather than the manner in which it was committed. Here, the information sufficiently set forth the crime committed—aggravated domestic battery—with a specific citation to the criminal statute defendant was being accused of violating. That statute states:

"A person who, in committing a domestic battery, strangles another individual commits aggravated domestic battery. For the purposes of this subsection (a-5), "strangle" means intentionally impeding the normal breathing or circulation of the blood of an individual by applying pressure on the throat or neck of that individual or by blocking the nose or mouth of that individual." 720 ILCS 5/12-3.3(a-5) (West 2020).

The information further set forth that defendant knowingly strangled Bacskai. The State was not required to further allege which specific manner of strangulation defendant was accused of simply because the statute further defines the term "strangulation" and utilizes disjunctives in doing so. See *People v. Perkins*, 216 Ill. App. 3d 389, 395-396 (1991) (indicating that the State need only allege the element of the crime with which it is charging defendant, even if one of the elements is itself further defined in alternative ways); *People v. Tanner*, 142 Ill. App. 3d 165, 168-69 (1986) (providing that although the definition of "sexual penetration" includes alternative acts listed in the disjunctive, the type of sexual penetration is not an element of the offense and its inclusion in a charging instrument is mere surplusage). In sum, strangulation is the element of the offense and was all that was required to be included in the charging instrument. The difference between whether defendant put his hand over Bacskai's mouth or nose or around her neck relates to the manner in which defendant strangled her and the fact that the State failed to allege the specific manner does not render the information insufficient. See *e.g.*, *People v. Lattimore*, 2011 IL App (1st) 093238, ¶ 70 (determining that, in regard to a charge of aggravated battery, there was no material difference between an indictment that charged defendant struck the victim about the body and the proof at trial that defendant caused the victim to be struck about the body, as the difference only related to the manner in which defendant caused bodily harm).

11

Because the information was sufficient, defendant's claim regarding its sufficiency was patently without merit. Thus, the court properly dismissed defendant's postconviction petition at the first stage.

¶ 26                                    III. CONCLUSION

¶ 27            The judgment of the circuit court of Kankakee County is affirmed.

¶ 28            Affirmed.